## SAMPSON v. THE STATE.

An indictment must be returned into open court. Accordingly, when the judge of a superior court, at ten o'clock a. m. of a given day, ordered that a recess of the session of the court for that day be taken, from that hour until 8.30 o'clock the next morning, and then left the court-house and did not return during the remainder of that day, an indictment returned during the afternoon of the same day by the bailiff of the grand jury to the clerk of the court, while he was in the court-room, was not properly returned, and a plea in abatement setting up such facts, and supported by uncontroverted evidence, should have been sustained.

Submitted January 15,—Decided February 15, 1906.

Indictment for selling liquor. Before Judge Mitchell. Thomas superior court. November 18, 1905.

*T. N. Hopkins* and *Theodore Titus,* for plaintiff in error.
*W. E. Thomas, solicitor-general,* contra.

FISH, C. J. At the October term, 1905, of the superior court of Thomas county, the judge, about ten o'clock a. m., on October 17, having disposed of the civil cases set for that day, ordered a recess of the court until 8.30 o'clock the next morning, excusing the petit jurors until that time, but not so relieving the grand jury and the clerk of the court from duty. The judge then left the court-house and did not return until the next morning. During the afternoon of October 17, the bailiff of the grand jury delivered to the clerk of the court, who was in the court-room, an indictment against Mitch. Sampson, which was marked "True bill" and signed by the foreman of the grand jury. Upon the call of the case for trial at that term of the court, the accused filed a plea in abatement, to the effect that no indictment had been returned against him in open court, either by the grand jury or by the bailiff thereof. The State traversed this plea, and upon the trial of the issue thus made, before a jury, the accused submitted evidence establishing the facts as above stated. The court directed a verdict against the plea. The case was then tried upon its merits, and the accused found guilty. He moved for a new trial, which motion was overruled, and he excepted.

In 10 Enc. Pl. & Pr. it is said : "An indictment must be returned into open court by the grand jury and in the presence of its members." The decisions of many courts are cited which sustain the text. Such was the procedure at common law, which is described by Chitty as follows: "When the jury have made [the] endorse-

ments on the bills, they bring them publicly into court; and the clerk of the peace at sessions, or clerk of assize on the circuit, calls all the jurymen by name, who severally answer to signify that they are present; and then the clerk of the peace, or assize, asks the jury whether they have agreed upon any bills, and bids them present them to the court, and then the foreman of the jury hands the indictments to the clerk of peace, or clerk of assize, who asks them if they agree the court shall amend matter of form, altering no matter of substance, to which they signify their assent. This form is necessary in order to enable the court to alter any clerical mistake, because they have no authority to change the form of the accusation, without the consent of the accusers." Chitty's Criminal Law, *324-325. The practice of grand juries returning indictments into open court prevailed in this State until a comparatively recent period. In *Danforth* v. *State,* 75 *Ga.* 614, Mr. Justice Hall, in delivering the opinion, said: "Within the memory of many of us, bills and presentments were returned into court by the entire body, whose names were called by the clerk, and in that way it was ascertained that a legal quorum was present, and after consenting that the State's counsel might alter any matter of form, but not any matter of substance without their privity and consent, they made their report to the court, which was directed to be entered on the minutes." He further said, that prior to the act of December 21, 1857, all witnesses to be examined before the grand jury, accompanied by some members of that body, were sworn in open court in each particular case in which they were summoned to testify, but that under that act it was made lawful for the foreman of each grand jury to administer the oath prescribed by law to witnesses that might be required to testify before that body. The motive that led to this change, the learned Justice said, was to prevent interruptions to the business of the court and the timely warning that was given to offenders of what was transpiring before the grand jury. He further said: "The administration of oaths to witnesses was regulated by a rule prescribed by law, but it was otherwise with the formalities observed in receiving and reporting to the court bills and presentments found by the grand jury. . . The oath taken by the bailiff attending the grand jury, for many years before the adoption of the code, was the same as that now found in the section above cited [Code of 1882, § 3916]. But when

it was adopted, or from what source it was derived, we are unable to determine. That the latter clause in it was not contained in the oath administered to bailiffs waiting on grand inquests in England, whence we derived our laws and customs and much of our practice, is rendered tolerably certain by reference to their old books of practice. . . The power of returning to the court bills and presentments found by the grand jury, if not expressly given by the latter clause of the bailiff's oath, which has now become a part of our law, may be well implied from the obligation and duty it imposes upon that officer, and so far no complaint has been heard of any detriment or wrong to parties from the practice, while it is evident that it has facilitated the business of the court, and rendered the execution of its penal process more easy and certain than it was under the former methods." The part of the oath of the bailiff of the grand jury referred to in that opinion is as follows: "You do solemnly swear that you will . . carefully deliver to that body all such bills of indictment, or other things, as shall be sent to them by the court, without alteration, and as carefully return all such as shall be sent by that body to the court." In *Danforth's* case, following *Davis's* case, *74 Ga.* 870, it was held, that the sworn bailiff of the grand jury is competent to make return into court of bills found by the grand jury. In *Bowen* v. *State,* 81 *Ga.* 482, Chief Justice Bleckley said that the rulings in the cases of *Davis* and *Danforth* went quite far enough, and that the solicitor-general, though an officer of the court, has no legal authority to make such return of an indictment, in the absence of the grand jury from the court-room, received by him in private from one or more members of the grand jury. It seems to us clear that the only change in procedure contemplated and authorized by the provisions of the oath prescribed for the bailiff of the grand jury was, to substitute the bailiff for the grand jury as the medium for returning the indictments and presentments found by that body to the court; and as under the old practice the grand jury was required to return indictments and presentments into open court, it follows that the bailiff must do likewise. In Gardner v. People, 20 Ill. 430, the court, after holding, "Before a party can be tried on an indictment, it must appear from the record that it was returned into open court," said: "This requirement is proper for the protection of the citizen against being forced to defend himself

against charges never acted upon or presented by a grand jury. If it were otherwise, by either accident or design, he might be compelled to make such defense." In Goodson v. State, 29 Fla. 511, it was held: "The only recognized manner in which the findings of a grand jury can be authoritatively presented is in open court." And the court said: "Were the rule otherwise, it would render it possible for a designing or revengeful foreman of a grand jury to ruin any citizen by surreptitiously filing with the clerk in his office an indictment manufactured by himself alone, upon which his fellow jurors had taken no action." Whether the rights of citizens might be jeopardized by a failure to require indictments to be returned into open court or not, we conceive that there is a sound reason in practice for requiring this to be done, and that is that there may be sufficient record evidence that the indictment has been duly found and returned. See, in this connection, *Nunn* v. *State,* 1 *Ga.* 243; *Bowen* v. *State,* 81 *Ga.* 482; *Rutherford* v. *Crawford,* 53 *Ga.* 138(3). The clerks of the superior courts are required to keep regular minutes of their proceedings from day to day. Civil Code, §4360. The proceedings of the court for the day on which the bailiff delivered the indictment in the present case to the clerk were terminated at about ten o'clock a. m., by the judge's order for a recess for the remainder of that day. Therefore the return of the indictment by the bailiff to the clerk during the afternoon of that day, the court not having reconvened and the judge not being present, was no part of the proceedings of the court of that day, and could not properly be so entered on the minutes. This being true, the entry could not properly be made nunc pro tunc. There could, therefore, be no sufficient evidence of record that the indictment was duly found by the grand jury and returned into court.

Our conclusion is that the court erred in directing a verdict against the plea in abatement and in refusing to grant a new trial. We do not, however, mean to intimate that a grand jury can not continue its deliberations, examine witnesses, and find presentments and indictments during a recess of a term of court (see Com. *v.* Bannon, 97 Mass. 214) ; all that we hold is that presentments and indictments found by that body must be returned into open court.

*Judgment reversed. All the Justices concur.*