27198. MORRIS *v.* THE STATE.

Decided March 11, 1939. Rehearing denied March 30, 1939.

*Astor Merrill, Edwards & Edwards,* for plaintiff in error.
*Hal C. Hutchens, solicitor-general,* contra.

Broyles, C. J. M. J. Morris was indicted, under Code, § 89-9907, for the offense of malpractice in office. The defendant's demurrer to the indictment was overruled, and timely exceptions were taken to that judgment, and it was assigned as error in the bill of exceptions. The case proceeded to a general verdict of

guilty; the motion for new trial was overruled, and to that judgment the defendant excepted. The indictment (formal parts omitted) reads as follows: "Hal C. Hutchens, solicitor-general, in the name and behalf of the citizens of Georgia, charge and accuse M. J. Morris, hereinafter referred to as the accused, a member of the board of commissioners of roads and revenues for the county and State aforesaid, with the offense of malpractice in office and with using oppression and tyrannical partiality and with using other means to delay and avoid the due course and proceedings of law. In that on the first day of December, 1936, in the county aforesaid, accused did counsel, aid, and procure B. M. Styles to submit the Board of County Commissioners of Douglas County, Georgia, a bill for $319, purporting to be 'to insurance on court-house,' said bill not sworn to by said Styles and no service rendered to said county by B. M. Styles in consideration of said bill and no contract of insurance of any kind being then and there or thereafter entered into by accused and Styles or said board and Styles.

"Accused advised Styles to submit said bill as a bill for $10,000 insurance without designating the property to be protected or the kind of protection to be provided or the name of the insurer to be bound by Styles as agent. Accused as chairman of said board approved said bill December 1st, 1936, without the authority of a majority of said board and did sign county warrant No. 801 issued to B. M. Styles, who received said warrant without delivering any policy of insurance to said county in consideration of the receipt of said warrant, and said warrant is now an outstanding indebtedness of said county. Accused as chairman of said board or said board or any member of said board then or thereafter during his or their tenure of office made any request or demand of B. M. Styles for any service to said county or contract of insurance as consideration for said voucher.

"In that a bill dated July 29, 1936, submitted by Southeast Sales Co. for $140.25 was approved by accused as chairman of said board and voucher No. 866 signed by accused as chairman was issued, said bill was for 33 kegs of 60, 40, 10, and 8-penny nails at $4.25 per keg. Said price was $1.25 more wholesale than said nails could have been bought in said county at retail. Said nails purported to have been received by said county by freight was not received in any manner by said county.

"In that accused as chairman of said board signed county warrant No. 931 on a bill submitted by Southeast Sales Co., dated October 24, 1936, and approved by the accused as chairman on said date without the authority of a majority of said board for thirty-six (36) gallons of Prestone at $3.70 per gallon, purporting to be delivered by car and freight with six (6) other items of clothing and wearing apparel, one item of soap and one item of bearings and covers totaling $533.80. Said Prestone was purchased at wholesale when same was selling locally at $2.70 retail and was selling wholesale by Beck and Gregg Hardware Co., and King Hardware Co., both of Atlanta, Georgia, with whom Douglas County had arrangements for a credit account, at $1.80 per gallon.

"In that accused as chairman has approved bill and signed vouchers at divers times between May 1, 1935, and December 31, 1936, for 34 barrels, totaling 17,000 pounds of No. 1 and No. 2 roller grease at 12½ per pound on the following bills, to wit: Goodroads Supply Co., October 13, 1936, five drums of tractor grease, 2500 pounds at 12½; Southeast Sales Co., August 25, 1936, one drum grease, 450 pounds 12½¢; Goodroads Supply Co., September 1, 1936, two drums of grease 1100 lbs. at 12½¢. And the following items bought and approved by accused as commissioner: R. F. Brinsfield, September 28, 1935, 950 pounds of roller grease at 12½¢, R. F. Brinsfield, October 1st, 1935, 440 pounds of grease at 12½¢, R. F. Brinsfield, June 1st, 1935, 520 pounds of grease at 12½¢, R. F. Brinsfield, August 6, 1935, 510 pounds at 12½¢, Southeast Sales Co., December 29, 1935, 1026 pounds grease at 12½¢, R. F. Brinsfield, Aug. 20, 1935, 550 pounds of grease at 12½¢, Southeast Sales Co., September 28, 1936, 1000 pounds grease at 12½¢, R. F. Brinsfield, July 30, 1935, 1070 pounds grease at 12½¢, R. F. Brinsfield, invoice no date, voucher No. 650, 980 pounds grease at 12½¢, R. F. Brinsfield, April 31, 1935, 550 pounds grease at 12½¢, R. F. Brinsfield, August 6, 1936, 490 lbs. grease at 12½¢; all of said grease being bought and paid for wholesale when same could be purchased locally at eight cents per pound and same being purchased with a written contract between said board and the Gulf Refining Co., for the purchase of the same grease at eight cents per pound.

"In that accused as a member of said board did approve and purchase, and was instrumental in the approval and purchase of,

a bill from Southeast Sales Company dated June 2nd, 1936, in which 400 pounds of floor sweep was paid for by said county at the rate of 10 cents per pound when the wholesale price for said article was 3½ cents per pound on November 5th, 1935, by the same vendor, the Southeast Sales Company being a trade name under which R. F. Brinsfield did business with said county, and on Nov. 5th, 1935, the said Brinsfield did sell the same floor sweep to said county at the rate of 3½ cents per pound, county warrant No. 738, and county warrant No. 848 was issued to pay said bill.

"In that accused as chairman of said board for the fiscal year from October 1st, 1935, to September 30th, 1936, did sign and approve bills and warrants as expenditures from county funds and as charges to said county the amount of $73,248 which was in excess of the revenue and income from all sources in the amount of $43,272, amounting to an excess of $30,012. Said expenditure in excess of the actual revenue of said county being then and there an unlawful act on the part of said accused as chairman of said board and as a member of said board.

"In that accused as chairman of said board did approve various bills and sign various and divers county warrants for feeding prisoners on the Douglas County convict camp at the rate of 50 cents per day to W. M. Plunkett, county warden of said county. Accused, by reason of his negligence and malfeasance in office, did fail to exercise supervision over said camp as a part of his duties as chairman and a member of said board and as a result of neglect did pay out large sums of the money of said county for the feeding of various felony and misdemeanor convicts who were not confined in said camp at the time said sums were paid. Said accused did sign and approve said warrants without any check whether or not said prisoners were confined in said camp or not.

"In that the accused did as chairman of said commission sign and approve bills and county warrants for the year 1936 in excess of the anticipated revenue for the year 1936 in the sum of $20,000.

"All of said acts then and there done were and are wrongful, unlawful, fraudulent, and done with intent to deceive and defraud and did deceive, defraud, and cause said county a loss of divers sums, further information as to which is to the grand jury un-

known, and said acts so committed being then and there contrary to the law of said State, the good order, peace and dignity thereof."

The defendant interposed the following demurrer:

"1. The averments of said indictment fail to charge this defendant with an indictable offense under the laws of Georgia.

"2. The allegations of said indictment fail to charge this defendant with an offense under the laws of Georgia in that it is not alleged therein that this defendant received any benefit from the alleged acts and conduct set out and described, or that Douglas County was injured and damaged in any amount or sum by reason of the alleged acts of defendant.

"3. Said indictment fails to sufficiently charge this defendant with the commission of any crime in that the allegations of said indictment charging this defendant with the offense of malpractice in office and with oppression and tyrannical partiality and with using other means to delay and avoid the due course and proceedings of law, and with the commission of acts alleged to be unlawful, wrongful, and fraudulent and done with intent to deceive and defraud Douglas County, are mere conclusions and no sufficient specific charges are made to enable this defendant to be informed of the nature of the offense charged or the manner in which it is alleged he used oppression and tyrannical partiality, nor is it alleged how Douglas County was defrauded with sufficient particularity.

"4. This defendant demurs specially to the allegations contained in said indictment, viz., 'And with using other means to delay and avoid the due course and proceedings in law;' for the reason that: (a) it is not stated what means were used, the term 'other means' being vague and indefinite; (b) it is not alleged what proceedings in law were avoided by the alleged actions of defendant; (c) it is not alleged what due proceedings in law were.

"5. Defendant demurs specially to the allegations in said indictment, viz., that accused did counsel, aid, and procure B. M. Styles to submit to board of county commissioners a bill for $319 when no insurance was contemplated or furnished—as being insufficient in law to charge this defendant with the commission of any offense for the reason that said allegations affirmatively show

that there was no legal liability on the part of Douglas County to pay said warrant, alleged to have been illegally issued without any consideration therefor, and therefore no loss could have legally accrued against said Douglas County.

"6. Defendant demurs specially to the allegations contained in said indictment, substance of which are as follows: Said accused did counsel, aid and procure the said B. M. Styles to submit bill for $319 for insurance upon court-house which was not furnished and which it was not contemplated should be furnished— for the reason that it was not alleged how, by what means or in what manner the said accused aided and procured the said B. M. Styles to submit said claim for payment by the authorities of the County of Douglas, and said allegations do not inform this defendant of the means it is alleged he employed to procure or induce B. M. Styles to submit said bill for the payment of funds as alleged. (a) Defendant further demurs to said allegations and to said indictment for the reason that there is no allegation that the accused received or expected any benefit for himself, directly or indirectly, on account of the presentation of such item against the county. The scienter requisite to the commission of any offense does not appear in said transaction as recited in said allegations with respect thereto. There is no allegation with reference to said transaction sufficient to constitute an attempt on the part of the accused to injure Douglas County or cause a loss of money or other thing of value to said county. Said indictment does not allege, nor by inference show, a motive on the part of the accused to benefit himself pecuniarily or otherwise by said transaction.

"7. The following allegations made in said indictment are vague, indefinite, uncertain, and equivocal, viz., in that a bill for 33 kegs of nails (describing kind) aggregating $140.25, being $4.25 per keg which was $1.25 in excess of price at which nails could be bought locally for, said bill being alleged to be in favor of Southeast Sales Co., are not sufficient to charge this defendant with any offense against the laws of Georgia, there being no allegation that accused committed said act with intention or hope that he would receive any benefit to himself or that the same constitute more than a mistake of judgment. (a) Said allegations are insufficient to and do not charge any offense under the laws of this State with reference to the non-delivery of said nails in that there

is no allegation that accused prevented the delivery of said nails to said county or had guilty knowledge that the same had not and would not be delivered to said county. (b) There is no allegation that the nails that could have been purchased locally were of the same quality as the nails that were purchased.

"8. The averments in said bill of indictment are vague, indefinite and uncertain and equivocal in that the allegations in same with reference to the issuance of warrant No. 931 in payment of bill submitted by Southeast Sales Co. for 36 gallons of Prestone at $3.70 per gallon when same could have been purchased locally at $2.70 per gallon and/or from King Hardware Co., or Beck & Gregg Hdw. Co., of Atlanta, at $1.80 per gallon, do not charge or allege that said Prestone could actually be had locally at the time of the purchase or could actually be had from the said Beck & Gregg Hardware Co., or King Hardware Company. (a) Said indictment does not allege that the Prestone that could be purchased at a lower price was of equal quality and value as that purchased at the higher price. (b) There is no charge or allegation that the approval of said bill was beneficial to the defendant or was done with any intention on his part to receive any benefit thereby. (c) There is no allegation that would show that the action was anything more than a mistake in judgment on the part of the accused as a county official. (d) There is no allegation as to the manner or means in which the accused prevented the other members of board of commissioners from having any voice or vote in connection with the issuing of said warrant for the payment of money or how or in what manner he prevented said other members from participation in the consideration of said claims against the county for said articles.

"9. The averments of said indictment are vague, indefinite, uncertain, and equivocal in that the allegations in said bill of indictment with reference to accused having approved and signed, at divers times between May 1, 1935, and December 31, 1936, as chairman of board of commissioners of Douglas County, vouchers for the payment of bills for 34 barrels of grease totaling 17,000 pounds of a described grease as per certain items stated therein, viz.; (1) Goodroads Supply Co., September 1, 1936, 5 drums 2500 lbs.; (2) Southeast Sales Co., Aug. 25, 1936, 1 drum 450 lbs.; Goodroads Supply Co., Sept. 1, 1936, 2 drums 1100 lbs.; and are

contradictory allegations—in that the particular items alleged the total as only 4050 lbs., as against the positive allegation that 17,000 were paid for. (a) The allegations as to said payments being made at divers times between two named dates are insufficient to put defendant on notice of the charges against him and are insufficient to enable defendant to be informed of the specific charges made against him. (b) Said allegations are insufficient to charge this defendant with the violation of any penal statute of the State, or to charge him with any indictable offense under the laws of said State, it not being alleged that accused intended to deprive Douglas County of any money or other thing of value, or that accused received or expected to receive, directly or indirectly, any benefit for himself on account of said transaction. (c) Said allegations do not charge this defendant with any crime for the reason that there are no charges that the grease purchased was not of the value of 12½¢ per pound, or that the same was in excess of the first market value of the character of grease purchased.

"10. The allegations contained in said indictment as to accused, as a commissioner buying and approving payment of bills for named items, to wit: (1) R. F. Brinsfield, Sept. 28, 1935, 950 lbs.; (2) R. F. Brinsfield, Oct. 1, 1935, 440 lbs.; (3) R. F. Brinsfield, June 1, 1935, 520 lbs.; (4) R. F. Brinsfield, Aug. 6, 1935, 510 lbs.; (5) Southeast Sales Co., Dec. 29, 1935, 1026 lbs.; (6) R. F. Brinsfield, Aug. 20, 1935, 550 lbs.; (7) Southeast Sales Co., Nov. 3, 1936, 500 lbs.; (8) Southeast Sales Co., Sept. 28, 1936, 1000 lbs.; (9) R. F. Brinsfield, July 30, 1935, 1070 lbs.; (10) R. F. Brinsfield, no date, voucher 650, 980 lbs.; (11) R. F. Brinsfield, Apr. 31, 1935, 550 lbs.; and (12) R. F. Brinsfield, Aug. 5, 1936, 490 lbs.—all charged—to have been purchased at 12½¢ per pound when grease could have been purchased locally for 8 cents per pound, do not charge any offense against this defendant and do not constitute any legal or proper charge of malpractice in office, in that it is not alleged that the greases that could have been purchased locally were of equal quality with the greases purchased, nor is it alleged that the price paid was in excess of the fair market value, nor is it stated that the purchase of a particular grease from a particular party at a particular price rather than the purchase of the same from a different party at a different price, is any abuse of the discretion of the said commissioner in making pur-

chases for the county, nor that the same was a violation of any legal duty imposed upon defendant as such commissioner. (a) No sufficient facts are alleged in connection with the allegations as to purchase of greases from named parties rather than from other named parties to show any legal obligation on the part of said commissioner to make purchase of greases from Gulf Refining Company. (b) Said allegations are insufficient to charge this defendant with any act constituting malpractice in office on account of failure to purchase from Gulf Refining Company, for the reason that there is no statute or law making it obligatory upon county commissioners of Douglas County to purchase grease from Gulf Refining Company, or from any particularly named or designated dealer or manufacturer.

"11. The allegations of said indictment charging that defendant was guilty of malpractice in office and with using oppression and tyrannical partiality by reason of the fact that he approved and was instrumental in the approval of a purchase of 400 lbs. of floor sweep from Southeast Sales Co., in June, 1936, at 10 cents per pound, when the price, on Nov. 5th, 1935, by the same vendor was 3½ cents per pound, are insufficient in law to authorize such a charge or conclusion. It is not alleged that the floor sweep purchased in June, 1936, was of the same quality as that purchased in November, 1935; nor is it alleged that there was no advance in the market price of floor sweep from November, 1935, to June, 1936; nor is it alleged that 10 cents per pound, in June, 1936, was not a fair market value of floor sweep of the quality purchased. (a) There is no charge in connection with this specification of the manner in which the accused was guilty of malpractice, etc.; that accused derived, or expected to derive, any benefit from the same or on account of the purchase of the same. (b) The allegations in connection with the approval of purchase of floor sweep, at most, charge nothing more than an error in judgment, and are wholly insufficient upon which to base a charge of criminal neglect or criminal action.

"12. The allegations of said indictment to the effect that the accused, as chairman of board of commissioners of Douglas County, was guilty of malpractice in office by reason of the facts that during the fiscal year, from Oct. 1, 1935, to Sept. 30, 1936, signed and approved warrants upon the treasurer of Douglas County for pay-

ment of funds in the amount of $73,248, when the anticipated income of said county for said period was only $43,272, thereby making the expenditures $30,012 in excess of the anticipated revenue, are wholly insufficient and do not constitute any act of criminal misconduct on the part of this defendant. (a) Said allegations are wholly insufficient, in that it is not alleged from what source the anticipated income of Douglas County was derived; nor whether the actual income for said period was equal to, less than, or greater than the expected income. (b) Said allegations are wholly insufficient for the reason that it is not set out the date, amount, and to whom payable, the alleged illegal warrants or vouchers were issued; nor is it alleged whether the same were paid by Douglas County. (c) Said allegations are insufficient to charge this defendant with crime for the reason that the allegations show that there was no legal liability on the part of Douglas County to pay a warrant illegally issued and therefore no loss could accrue to Douglas County. (d) The issuance of warrants in excess of the anticipated income of a county does not constitute a criminal offense under the laws of Georgia, and therefore such an allegation as to the manner and means in which the defendant was guilty of malpractice in office and of using oppression and tyrannical partiality to obstruct the proper proceedings of law, do not, in law, charge defendant with any misconduct.

"13. The allegation in said indictment that the defendant was guilty of malpractice in office by reason of the fact that he, as chairman of the board of commissioners of Douglas County, did approve various bills and sign various and divers county warrants for feeding prisoners in Douglas County convict camp, in favor of W. M. Plunkett, warden of said county, and failed to exercise supervision over said convict camp as a part of his duties as chairman and member of said board; and on account of said approval of bills and failure to supervise convict camp, large sums of money were paid out for feeding convicts who were not confined in said camp—are wholly insufficient to charge this defendant with the commission of any offense under the laws of Georgia, and are wholly insufficient to put this defendant on notice of the acts relied upon by the prosecution as constituting malpractice in office on the part of the defendant. The allegations are wholly insufficient in that they are vague, uncertain, and indefinite, said allegations

fail to show: (a) particular bills paid, amounts, dates, and name of prisoner; (b) dates, amounts, and numbers of county warrants alleged to have been signed; (c) there is no obligation [allegation?] in said indictment that it was a part of the duties of the said defendant as chairman to exercise supervision over the convict camp of Douglas County; (d) there is no law of force making it a part of the duties of chairman of board of commissioners to exercise supervision over convict camp.

"14. The allegations in said indictment, that defendant was guilty of malpractice in office by reason of the fact that he did sign and approve bills and county warrants for the year 1936, in the amount of $20,000 in excess of the anticipated revenue of said county for said year, are wholly insufficient to charge defendant with the violation of any criminal law or to charge defendant with any conduct amounting to malpractice in office. (a) There is no allegation of what the anticipated income of Douglas County was for the year 1936, nor from what source the same was derived; (b) there is no allegation of the amount of lawful warrants approved; (c) there is no allegation as to the date, amount, and to whom the alleged illegal warrants were issued; (d) said allegations affirmatively show that there was no legal liability on the County of Douglas to pay warrants illegally issued and therefore no loss could accrue to Douglas County by reason of the alleged illegal issue of same."

The Code section (89-9907), under which the defendant was indicted, is followed by section 89-9908 which reads as follows: "An indictment under the preceding section shall specially set forth the merits of the complaint, and a copy thereof shall be served on the defendant before it is laid before the grand jury. The prosecutor and the defendant, and their witnesses, shall have the right of appearing before and being heard by the grand jury. The indictment, if found true by the grand jury, shall, as in other cases, be tried by a petit jury." It is obvious from the provisions of the latter section that an indictment for malpractice in office is an exception to the general rule that an indictment which sets forth the alleged crime in the language of the Code is not subject to demurrer. In *Oliveira* v. *State*, 45 *Ga.* 555, 557, Judge McCay said: "The whole of this provision for the prosecution of public officers for malpractice, indicates the intention of the legislature that the

proceedings shall be guarded with more than ordinary strictness. The accused is entitled to notice of the charge, and to a copy of the bill of indictment, before the bill is found. He has, too, a right to go before the grand jury, to cross-examine the witnesses, and perhaps to bring forward matters in explanation and defense. The act further provides that the indictment shall 'specially set forth the merits of the complaint.' This is far stronger language than is used in other indictments: Code, section 4432. Section 4535 provides, as a general rule, that it shall be sufficient to set forth the offense in the language of the Code. Something more must therefore be meant by the special provision of this section—4432 [89-9908]. We think that these words mean that there must be set forth in the indictment a detailed statement of the facts upon which the charge is predicated. This indictment does not do this. It charges him [the defendant, a justice of the peace] with having taken a certain amount for his costs in a particular case, and that such sum was more than the legal costs. But it fails to state what the legal costs were, and how much he took more than the legal costs. It might just as well have charged that he took more costs than the law permitted, and said nothing as to any amount. This is not a 'specific' statement of the merits of the complaint. Properly it ought to be stated what service was done, and the costs for each item, as fixed by law, and then alleged he took more and how much more. As it is, the accused only is informed that he took too much, leaving him to grope in the dark as to what items were overcharged and what he must prepare himself to meet. Whilst we would be slow to put the least hindrance in the way of bringing to speedy punishment a corrupt officer, we must also remember that the law shows great tenderness to their errors as judges, and holds those who charge them with malpractice to more than ordinary strictness." In that case the defendant was found guilty of malpractice in office, and moved in arrest of judgment on the grounds: (1) there is no allegation in the indictment of what portion of the costs alleged to have been demanded by the defendant was illegal, or other and greater than the amount he was entitled to by law; (2) because the indictment fails to state whether the defendant was entitled to any costs or not, and, if any, how much. The motion was overruled, and that judgment was reversed by the Supreme Court.

In *Mitchell* v. *State,* 17 *Ga. App.* 405 (87 S. E. 154), this court held: "An indictment against a justice of the peace for the offense of malpractice in office, which charged that he 'did wilfully, knowingly, and corruptly, in the administration and under color of his office, demand and receive from one M. H. Rothschild the sum of five dollars, which was demanded and received as a fee or costs by the said [defendant] for "garnishee's answer," in the case of Norton Frierson *v.* M. H. Rothschild, and Joseph Rosenheim Shoe Company, garnishee, a suit on account then pending in the justice court of the said [defendant], when in truth and in fact the said [defendant], justice of the peace as aforesaid, did not make up any answer for said garnishee, nor was he concerned in the making of any such answer, nor was he otherwise entitled by law to exact the said sum of five dollars from the said M. H. Rothschild,' was subject to general and special demurrer, there being no averment in the indictment that the garnishee company did not make any answer in the case, or that it was not put to any expense in making the answer, or that the defendant demanded and received the five dollars with the intent of keeping it for his own use and not for the purpose of paying it over to the garnishee company to cover the expense of making its answer; and the use of the words 'wilfully, knowingly, and corruptly,' and the employment of the other language, to wit, 'nor was he otherwise entitled by law to exact the said sum of five dollars from the said M. H. Rothschild,' did not cure the defects pointed out. The court erred in overruling the demurrer." The act of 1917 (Ga. L. 1917, p. 344), creating a board of commissioners of roads and revenues for Douglas County, provides that the board shall have exclusive control over all county affairs, and that at their meetings the board "shall sit as a court for county purposes," and that "a majority of said board shall constitute a quorum for the transaction of business." And, "It shall be the duty of the chairman to preside at all meetings of the board, sign all county warrants on the county treasury, and all orders when authorized by the board of county commissioners. Said chairman shall have the right to . . perform any and all duties imposed on the board of commissioners." In *Russell* v. *State,* 57 *Ga.* 421, 422, the Supreme Court said: "The motion in arrest of judgment was properly overruled. The indictment specially set forth the merits of the complaint against the defendant as a justice

of the peace, as required by the 4504th section of the Code. Whether the defendant acted wilfully, oppressively, or with tyrannical partiality unbecoming the character of an upright magistrate, or whether his acts were merely errors of judgment in regard to his official duty, were questions to be determined from the evidence, the presumption being in favor of the defendant."

Applying the above-cited authorities to the indictment in the instant case, we hold that the indictment was not subject to the general grounds of the demurrer and they were properly overruled. The fact that the indictment failed to charge that the defendant received any benefit from the commission of his alleged unlawful and fraudulent acts and conduct is immaterial. The Code, § 89-9907 (under which the indictment was drawn), reads as follows: "Any ordinary, member of any board of commissioners, county judge, or justice of the peace, who shall be charged with malpractice in office, or with using oppression or tyrannical partiality, or with wilfully refusing or failing to preside in or hold his court at the regular terms thereof or when it is his duty under the law to do so, or with using any other means to delay or avoid the due course or proceeding of law, *or with any other conduct unbecoming the character of an upright magistrate* [italics ours], or who shall wilfully and knowingly demand more cost than he is entitled to by law, in the administration and under color of his office, shall be punished as for a misdemeanor and shall be removed from office." It is apparent that the Code section covers a multitude of sins, and that it can be violated without the defendant receiving any personal benefit or reward from his unlawful and fraudulent conduct. There is no charge in the indictment that the defendant received or demanded more cost than he was entitled to by law, but he was charged with committing certain specified wrongful, unlawful, and fraudulent acts with the intent to defraud, and thereby did defraud, the county of large sums of money; and, from the allegations of fact in the indictment, at least some of the amounts alleged to have been lost by the county can be ascertained by a mere matter of arithmetic. However, in our opinion, the indictment was subject to the special grounds of the demurrer in paragraphs 11, 12, 13, and 14 thereof, for the reasons stated in said paragraphs, with these exceptions: sub-paragraphs (a) and (b) of paragraph 11, sub-paragraph (c) of paragraph 12, sub-paragraphs (c) and (d) of

paragraph 13, and sub-paragraph (d) of paragraph 14, are held to be without merit. The remaining special grounds of the demurrer were properly overruled. The error in overruling said paragraphs 11, 12, 13, and 14 of the demurrer rendered the further proceedings in the case nugatory.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*