ZUGAR *v.* THE STATE.

No. 14227.   JULY 15, 1942.

*S. W. Fariss* and *Maddox & Griffin,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, Henderson Lanham, solicitor-general, Emil J. Clower, assistant attorney-general,* and *Claude Shaw,* contra.

DUCKWORTH, Justice. The exception to the judgment striking the plea in abatement will be first considered, and if the court erred in striking this plea all subsequent proceedings were nugatory.

The rule of procedure for the return of indictments at common law and in this State until the decisions in *Davis* v. *State,* 74 *Ga.*

869, and *Danforth* v. *State,* 75 *Ga.* 614 (58 Am. R. 480), was that the members of the grand jury would bring such indictments into court, where the clerk of the court called the names of the jurors, who answered to signify their presence, and thereupon the foreman of the jury would deliver the indictments to the clerk of the court, and this report of the grand jury was by direction entered on the minutes of the court. *Sampson* v. *State,* 124 *Ga.* 776 (53 S. E. 332, 4 Ann. Cas. 525). The legislature enacted the law (Code, § 59-209) prescribing an oath to be taken by the bailiff who waits upon the grand jury, by which oath the bailiff is sworn to diligently attend the grand jury, and carefully deliver to them all bills of indictment or other things sent to them by the court, without alteration, and "as carefully return all such as shall be sent by that body to the court." In the *Davis* and *Danforth* cases, supra, the grounds of the pleas in abatement reviewed by this court were that the grand-jury bailiffs, rather than the jurors themselves, returned the indictments into court; and in each case it was held that the above-quoted portion of the bailiff's oath authorized a substitution of the bailiff for the members of the grand jury in the performance of the act of returning into court an indictment which had been duly found by the grand jury. In *Bowen* v. *State,* 81 *Ga.* 482 (8 S. E. 736), the plea in abatement alleged that the indictment was not returned into court by the jury or by any sworn officer, but was privately handed to the solicitor-general by one member of the grand jury. A demurrer to the plea was sustained, and in reversing that ruling this court said: "It has been held, in *Davis* vs. *State,* 74 *Ga.* 870, and *Danforth* vs. *State,* 75 *Ga.* 614, that the sworn bailiff of the grand jury is competent to make return of bills found by the grand jury; *but we think this is going quite far enough.*" (Italics ours.) *Sampson* v. *State,* supra, involved the single question as to whether the indictment had been returned in the manner required by law. The facts there were that at the October term of the superior court, the judge, having disposed of civil cases about ten o'clock a. m., ordered a recess of the court until 8:30 o'clock the next morning, excusing the petit jurors until that time, but not so relieving from duty the grand jurors and the clerk of the court. The judge left the court-house, and did not return until the next morning. During the afternoon of the same day the bailiff of the grand jury delivered to the clerk

of the court, who was at the time in the court-room, an indictment marked "true bill" and signed by the foreman of the grand jury. This court held that the indictment was not properly returned, and that the plea in abatement should have been sustained. It was pointed out in the opinion, that the clerks of the superior courts are required to keep regular minutes of the court proceedings from day to day; that the proceedings of the court terminated about ten o'clock when the judge ordered a recess for the remainder of the day; that therefore the return of the indictment in the afternoon of the same day, court not having reconvened and the judge being absent, was no part of the court proceedings of that day, and could not properly be entered on the minutes; and that no sufficient evidence of record that the indictment was duly found by the grand jury and returned into court could be made. The first sentence of the headnote in that case states a rule that must be complied with in every case. That rule is: "An indictment must be returned into open court." The decisions in *Davis* v. *State* and *Danforth* v. *State,* supra, in no wise altered this rule. They merely held that the bailiff may be legally substituted for the members of the jury in complying with this rule. In *Barlow* v. *State,* 127 *Ga.* 58 (56 S. E. 131), it was said: "The common practice in this State, though not exclusive, is for the indictments or special presentments of the grand jury to be returned to the court, not by them in a body, but through their sworn bailiff. *But this must be done in open court. Danforth* v. *State,* 75 *Ga.* 614; *Sampson* v. *State,* 124 *Ga.* 779." (Italics ours.) The foregoing authorities show that to render an indictment valid under the law of this State, it must be returned by the grand jury or the sworn bailiff of the grand jury into open court, and such return must be entered by the clerk upon the minutes of the court as a part of the proceedings of that court. The common-law rule for the return of indictments in Federal courts was applied in Renigar *v.* U. S., 172 Fed. 646 (97 C. C. A. 172, 26 L. R. A. (N. S.) 683, 19 Ann. Cas. 1117). That opinion, after reciting the constitutional provision that no person shall be held to answer for a capital or otherwise infamous crime except on a presentment or indictment of a grand jury [Code, § 1-805], asserts that this constitutional provision intends not merely an indictment in form, but a valid indictment "found and presented according to the settled usage and established mode of pro-

cedure." It was held that to constitute a valid indictment it must have been publicly presented in open court, all the grand jurors being present and answering to their names, the indictment then being delivered by the foreman to the clerk of the court, and the fact entered of record. Attorneys for the State in the present case do not challenge the contention that the indictment must be returned into open court, nor do they attack that rule; but it is insisted that what was done in the present case amounted to a return of the indictment in open court and was a substantial compliance with the rule.

Many definitions of the term "in open court" are cited in the briefs of counsel on both sides. The definition of this term has been varied somewhat by the courts of the country as it is used in particular statutes. See 29 Words and Phrases, 523. This term as used in the rule here involved is specifically and clearly defined by the practice of the grand jury, in both England and this State, before the change in the rule whereby the bailiff was substituted for the grand jury. "In open court" under that practice meant the personal appearance of the grand jury in the court-room or the place where court was being held open to the public with the judge and clerk present. Definitions of the term which differ from the one thus given would confuse, rather than aid, the court in its effort to ascertain the true meaning of the term as used in the rule. We need proceed no further, in defining that term, than the discovery of what actually took place in satisfaction of the rule. It could not seriously be contended that the grand jurors should or could legally have gone in search for the judge, and then the clerk, and having found them, as was done by the bailiff in the present case, delivered the indictment as was done in the present case, and thereby have delivered the indictment "in open court" as required by the rule. What the grand jurors could not legally do can not be done by the grand-jury bailiff.

It is the duty of the judges of the superior courts to hold court at the county site and at the court-house, if any, in each county, or some other place in the county designated by law. Code, § 24-2609. It is a fundamental part of our judicial system that the general public be permitted to witness court proceedings sufficiently to guarantee that there may never be practiced in this State secret or star-chamber court proceedings, the deliberations of the juries

alone excepted. It is argued by counsel for the State that this defendant by the plea alleges no injury which he has sustained, and is therefore standing on a mere technicality in seeking to quash the indictment. There is nothing in this record that shows any intentional wrong upon the part of any of the court officials. Indeed, it may truthfully be said that neither the bailiff, the judge, nor the clerk intended to do the slightest harm to the defendant. The question therefore immediately is presented as to whether the rule requiring the return of an indictment into open court will now by construction be so modified as to permit the procedure followed in the present case, in the hope and for the purpose of thus preventing interference with the trial and disposition of cases by rules of procedure, upon the theory that technicalities and formalism serve no good purpose and must be put aside, or whether rules of procedure growing out of experience and designed to safeguard the liberties of men, and which have been observed both in England and in this State for centuries, shall be retained and enforced. This court is not unmindful of the demands of complete justice that the courts of this State abstain from shackling themselves with archaic and meaningless formalisms which impede justice and delay the courts in the dispatch of business. However, it is of vital and fundamental importance that eagerness on the part of the judiciary to break such shackles must stop short of uprooting those rules of procedure which necessitate no delay, impose no extra burden upon the officials to which they apply, and which stand as an impregnable fortress ready to ward off any assault upon the freedom, the liberty, and the dignity of men. The rule here involved is so well established by the binding decisions of this court that we need not here attempt to buttress the same by our opinion as to the purposes which it was designed to serve. It has been said already that the requirement of return of the indictment into open court served the purpose of having such return legally entered on the minutes of the court, which minutes can be made only when court is open. It may be observed that public officials are made conscious of the duty to faithfully perform official acts when they are acting in the presence of the general public; and this fact causes the public to have confidence in the officials, and hence confidence in the governmental departments where such officials serve. A self-respecting law-abiding citizen would consider

himself irreparably damaged if an indictment charging him with crime reached the court by illegal means and required him to defend against it; and though such injury would be largely cured by his successful effort to quash such indictment on the ground that it was so illegally filed against him, he could not thereby completely repair the injury suffered, the scar would remain; and it is to prevent the possibility of such an injury that this rule was designed and must be observed. It is not enough to know that in this State there is hardly a chance that bogus indictments for personal spite will be filed in our courts. The preservation of the honor and purity of the courts, the confidence and respect of the public in those courts, and the good name of the citizens must not be left to chance, but should be and are by this rule guaranteed.

A sufficient reply to the argument of counsel for the State that this defendant failed to show any injury which he has sustained is that he was injured when this rule of law was violated. Such violation is per se injurious to the defendant. It was stated in the opinions in the *Davis* and *Danforth* cases, supra, that the defendants there showed no misconduct on the part of the bailiff, and that no injury to the defendants was alleged; and counsel for the State in the present case argue on authority of those decisions that it is necessary to show such facts in order to sustain the plea based upon improper return of the indictment into court. As stated above, the affirmance in each of those cases was based on the fact that it was legal to substitute the bailiff for the jurors themselves. In neither case did this court hold that when such substitution had been made the rule would be further relaxed to dispense with the former method of returning the indictment into court. The bailiffs in those cases complied with the rule in every respect, and accordingly were guilty of no misconduct; and since they were authorized by the decisions to act in the place of the jurors, the defendants suffered no injury. However, in the present case, the bailiff, although no doubt without intent to do so, was guilty of misconduct which amounts to a violation of his duty. Hence misconduct on the part of the bailiff, if necessary to sustain the plea in abatement, is shown in the present case, and by showing a violation of the rule the defendant shows injury to himself. The plea in abatement alleges grounds for quashing the indictment, and it was

error to dismiss that plea on motion. This error rendered nugatory the subsequent proceedings in the case.

*Judgment reversed.* *All the Justices concur.*