## 38111. CADLE *v.* THE STATE.

DECIDED FEBRUARY 1, 1960.

*Hoke Smith, Bobby Lee Cook, M. K. Pentecost,* for plaintiff in error.

*Paul Webb, Solicitor-General, E. L. Tiller, J. Walter LeCraw, A. Paul Cadenhead,* contra.

GARDNER, Presiding Judge. ■ The superior courts of this State are given general and exclusive jurisdiction in all criminal cases where the offender is subjected to loss of life or confinement in the penitentiary. Constitution, art. VI, sec. IV, par. I (Code § 2-3901), and see also Code § 24-2615.

Prosecutions in the superior courts are ordinarily instituted by indictments. A prosecution may be brought to a superior court by accusation only in misdemeanor cases and in felony cases other than capital felonies, and then only when the defendant in writing waives indictment by the grand jury. Code (Ann.) § 27-704.

In *Zugar v. State,* 194 *Ga.* 285, 286 (21 S. E. 2d 647), the Supreme Court said: "The rule of procedure for the return of indictments at common law and in this State until the decisions in *Davis v. State,* 74 *Ga.* 869 and *Danforth v. State,* 75 *Ga.* 614 (58 Am. Rep. 480), was that the members of the grand jury would bring such indictments into court where the clerk of the court called the names of the jurors, who answered to signify

their presence, and thereupon the foreman of the jury would deliver the indictments to the clerk of the court, and this report of the grand jury was by direction entered on the minutes of the court. *Sampson* v. *State*, 124 *Ga.* 776 (53 S. E. 332, 4 Ann Cas. 525)."

While it was held in *Davis* v. *State*, 74 *Ga.* 869, supra, and *Danforth* v. *State*, 75 *Ga.* 614, supra, that the enactment by the General Assembly of the statute now codified as Code § 59-209 of the Code of 1933 permitted indictments to be returned by the sworn bailiff of the grand jury, instead of by the grand jury as a body, this change in the procedure did not affect the requirement that indictments be returned into open court. That rule must be complied with in every case. *Barlow* v. *State*, 127 *Ga.* 58 (56 S. E 131) ; *Zugar* v. *State*, 194 *Ga.* 285, supra.

The requirement that indictments be returned into open court is manifestly one that they be returned to the court, not to the judge, for it is the court, not the judge, upon which the Constitution and the law confer general jurisdiction of criminal cases. Judges of the superior courts are clothed with many powers, and vested with much authority,—and rightly so,—but they are not clothed with power or authority to receive indictments from the grand jury. The court, not the judge, must do that. The judge is the court for the reception of indictments only when he is presiding in *open court*. There must be a judge presiding, the clerk must be present, and the place of the reception of the indictment must be one where the court is being held open to the public. *Zugar* v. *State*, 194 *Ga.* 285, supra. In this case, the judge received the indictment from the bailiff in the presence of the clerk in the room set aside by order of the court as the office of the presiding judge. While the testimony as to the circumstances under which the indictment was received indicates that the door between the office occupied by the judge and the anteroom was open, and that a number of people, including one of the attorneys for the defendant, were in this outer room, and that the public were not "excluded" from the inner room, the evidence relied upon to show that the court was at that time and place being *held open* to the public is, to say the least, doubtful and uncertain. Whether there may be "open court" for

the reception of indictments at any place other than one designated by law, or pursuant to law by the proper county authorities (Code §§ 24-3001, 24-3003, 24-3004) for the regular performance of any and all judicial functions of the court, including jury trials, seems to us to be at least highly doubtful. In the present case, it appears that a regular jury trial, presided over by another judge of the superior court of the Atlanta Judicial Circuit was in progress in the regular public courtroom immediately adjacent to the office in which the judge received this indictment. No reason is advanced why the indictment could not have been returned into the open court then in session.

In *Zugar* v. *State*, 194 *Ga.* 285, supra, the Chief Justice said: "It is a fundamental part of our judicial system that the general public be permitted to witness court proceedings sufficiently to guarantee that there may never be practiced in this State secret or star-chamber court proceedings, the deliberations of the juries alone excepted." *We concur fully in that statement.*

Were this case dependent alone on the validity of the return of the indictment, we would be constrained to hold that it was not returned into "open court" as required by law, and should, therefore, be set aside. Since the case is reversed for other reasons, and the error is not likely to be repeated, we withhold the ruling.

■ That the defendant here was charged by the indictment served upon him with a wrongful act constituting malfeasance in office, as was also his joint defendant, seems to be settled by the ruling of the Supreme Court in *Cargile* v. *State*, 194 *Ga.* 20 (20 S. E. 2d 416). That he was a State official within the meaning of the act of 1943 (Ga. L. 1943, pp. 284, 287; Code, Ann., § 40-1617) seems also to be clear. It was alleged by the indictment that the defendant's co-conspirator was Comptroller General and ex-officio Georgia Industrial Loan Commissioner, and that the defendant was an employee of the State of Georgia, holding a position under the control and supervision of the Comptroller General and Georgia Industrial Loan Commissioner.

The statute under consideration (Code, Ann., § 40-1617) uses the words "any State official," manifestly intending that the class of persons to whom the safeguards of Code § 89-9908 were to be extended should be one broader than that of elected State

officers, that is, that persons other than *elected* State officers are State officers.

Whether the defendant here was a "State official" depends upon his duties, not upon what he was called. The indictment here charges that he was to "counsel and command" employees of the State to engage in political activity, instead of their public duties, thus alleging, at least by clear implication, that he was not a mere employee but an official in charge of and having authority to command employees of the State.

Indeed, the State treated the defendant as a State official. The solicitor-general had the indictment served upon him and allowed him to attend the hearing before the grand jury. He was permitted to make an unsworn statement.

We think it clear that under the act of 1943 and Code § 89-9908, the defendant was entitled to the right of appearing before and being heard by the grand jury, together with his witnesses.

This much the State does not contest. It does contest the right of the defendant, and, we assume, of his co-defendant, to the benefit of counsel before the grand jury. That the right was claimed and denied is shown by the record. The trial judge ruled that the right was properly denied. In so doing, we think the court was in error.

Contrary to the usual rule, a criminal proceeding under Code § 89-9908 is begun by the service of a copy of an indictment, *specifically setting forth the merits of the complaint*, upon the defendant. This must be done *before* the indictment is laid before the grand jury. Then the prosecutor and the defendant, and their witnesses, are entitled to the right of appearing before and *being heard* by the grand jury.

The rights conferred upon the accused by the statute include the right to cross-examine the witnesses against him. See *Oliveira* v. *State*, 45 *Ga.* 555 and *Morris* v. *State*, 59 *Ga. App.* 804 (2 S. E. 2d 240).

We think this also includes the right of the accused to offer evidence in his behalf. This right is necessarily implied by the language which confers upon the prosecutor and defendant, *"and their witnesses"* the right to appear and be heard by the grand jury.

We need not consider the wisdom of the statute, or the reasons for its enactment. Those are matters which address themselves to the legislative branch of the State government. It is sufficient that the statute is of force, and that its meaning is clear.

Having seen that it confers upon the accused the right to appear and be heard, to have his witnesses appear and be heard, and to cross-examine the witnesses for the prosecution, it remains to be seen only whether it also confers upon the accused the right to have the benefit of counsel before the grand jury.

The answer seems to us to be clear.

Our Constitution (art. I, sec. I, par. V; Code § 2-105) provides: "Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel . . ."

Our Constitution also provides (art. I, sec. I, par. IV; Code § 2-104): "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both."

The Constitution of the United States provides, by the Sixth Amendment, that: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

It has many times been said by the courts of the United States that the right of a defendant in a criminal proceeding to have the assistance of counsel for his defense applies to every step of the proceeding against him. See Powell *v.* Alabama, 287 U. S. 45 (53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527) and Council *v.* Clemmer, 177 F. 2d 22, 24.

A denial of the right to the privilege and benefit of counsel is a denial of due process of law. See Powell *v.* Alabama, 287 U.S. 45, supra, and *Walker* v. *State,* 194 *Ga.* 727 (22 S. E. 2d 462).

It goes without saying that where rights or privileges are granted by statute or constitutional provision, there are carried with them by necessary implication, such additional rights as may be necessary to the effective exercise of those granted. But see *McLucas* v. *State Bridge Building Authority,* 210 *Ga.* 1 (77 S. E. 2d 531).

To grant to a defendant the right to appear and be heard, to offer testimony on his own behalf, and to cross-examine the

witnesses testifying against him, while denying the right to the privilege and benefit of counsel for the effective presentation of his own evidence and the effective cross-examination of the witnesses against him, would, we think, be to grant an empty, useless right—one that could avail him little.

We think the statute, by granting the defendant the right to appear and be heard, to offer evidence, and cross-examine witnesses, also granted the right to have the privilege and benefit of counsel before the grand jury.

We think also that the guarantee of our Constitution to every person charged with an offense against the laws of Georgia of the privilege and benefit of counsel, secures to every such person the right to counsel at every step of a proceeding against him at which he is entitled of right to be heard.

This does not mean that every person against whom a criminal investigation is being conducted is entitled to be heard or represented before the grand jury.

Here the criminal proceeding was instituted by the service of the indictment. The statute gives the defendant the right to appear and be heard. Under the statute and the Constitution, he was entitled to counsel.

It was error to overrule the ground of the plea in abatement which presented the contention that the indictment was fatally defective because the defendant was denied the right of counsel before the grand jury.

■ Counsel for both sides seem reluctant to take a position as to whether the indictment was brought under Code § 26-4201 or Code § 26-4202.

Counsel for the defendant say it was brought under both and is, therefore, duplicitous. Counsel for the State say that *Rollins* v. *State*, 215 *Ga.* 437 (111 S. E. 2d 63) settles the question of duplicity.

The indictment itself recites that it is brought under Code § 26-4201. The defendants are charged with the offense of "Felony, (Section 26-4202)."

At least one of the defendants is charged as a public officer. He is alleged to be Comptroller General of the State of Georgia. The other defendant, as we have seen, is also alleged to be a State official.

Code § 26-4201 relates to "Any two or more persons who shall conspire", etc.

Code § 26-4202 relates to "any person holding any public office who shall conspire or agree with any person, *in or out of office,* to cheat or defraud . . .", etc. (Italics ours).

Accordingly, the indictment was not duplicitous. See *Rollins v. State,* 215 *Ga.* 437, supra.

■ Chapter 26-42 of the Code is a codification of the act of the General Assembly approved August 23, 1872 (Ga. L. 1872, p. 25). It may have been somewhat broadened by its codification since § 26-4202 as codified omits the qualifying language of Section 2 of the original act, which caused it to relate to property "under the control or possession of said officers as such . . ."

The original act, by Section 1 provided: "If any two or more persons shall conspire or agree to defraud, cheat, or illegally obtain from the State of Georgia, or any county thereof, or any public officer of this State, or any county thereof, or any person exercising the duties of any such office, any property, real or personal, bonds, notes, choses in action, money, valuable currency, instruments in writing of any kind of value, or anything designated by the laws of this State as property belonging to said State or county, or under the control or possession of said officers as such, such persons shall be guilty of a felony, and, on conviction thereof, shall be punished, by imprisonment and labor in the Penitentiary, for a term not less than two nor longer than ten years." This is now Code § 26-4201.

Section 2 of the original act refers to "any property of any kind described in Section 1 of this act."

Thus the property dealt with by Code § 26-4202 which was Section 2 of the act, is that referred to in § 26-4201, which was Section 1 of the act.

It should be noted, however, that the original act, by Section 1, not only specified tangible property, real or personal, but intangible property, "bonds, notes, choses in action, money, valuable currency, instruments in writing of any kind of value, or anything designated by the laws of this State as property belonging to said State or County . . ."

The act of 1872 was first codified as Section 4493 et seq. of the Code of 1873. Thence it was carried forward into each succeeding Code, and finally into that of 1933.

It was originally codified in substantially the language of the present Code. Each codification omits the specific descriptive words of the original act, such as "bonds," "notes," "money," "valuable currency", etc., and makes penal a conspiracy or agreement to defraud, cheat or illegally obtain from the State or any county thereof, etc., "any property belonging to the State or county."

The Codes of 1895, 1910 and 1933 were adopted. Those of 1873 and 1882 and 1926 were not.

While it is presumed that a change in the law is not intended by the legislature in the adoption of a Code, yet "where such a change by codification does appear, it must be given effect, not because of any power of legislation vested in the codifiers, but because of the adopting statute." See *Atlanta Coach Co.* v. *Simmons,* 184 *Ga.* 1, 6 (190 S. E. 610), *Maddox* v. *First Nat. Bank of Jefferson,* 191 *Ga.* 106, 109 (11 S. E. 2d 662), and *Sirota* v. *Kay Homes, Inc.,* 208 *Ga.* 113, 114 (65 S. E. 2d 597).

Thus it might well be said that the codification of the act of 1872 by the adopted Code of 1895 (Penal Code, 1895, § 287 et seq.) operated to change the law so as to eliminate the various classes of intangible property specifically enumerated by Section 1 of the act.

Even if this be true, we think the decision in *Rollins* v. *State,* 215 *Ga.* 437, supra, holds that to conspire to defraud the State of money is a violation of the act.

Thus the indictment must be said to allege that the object of the conspiracy was to defraud the State of property falling within the class referred to in the statute.

At common law, no overt act was necessary to constitute the offense of conspiracy. 12 C. J. 549, Sec. 13; 11 Am. Jur. 546, § 6; 15 C. J. S. 1066, § 43.

And the Georgia statute, by the express language of § 26-4204, provides: "The offenses described in the three preceding sections shall be complete when the conspiracy is effected and shall be punished whether the same are carried into effect or not."

Thus the statute as interpreted in the *Rollins* case makes it a crime for two or more persons to conspire to defraud the State of money.

The attack on the indictment here seems to concede that this is so. It is contended, however, that the indictment is insufficient to charge a conspiracy because the exact object to be accomplished by the conspiracy is not set forth, with the result that the indictment is too vague and indefinite to put the defendants on notice of the charge they are required to meet and defend.

In many states and in the United States, some overt act is usually a necessary element of a conspiracy to commit any offense against the Government. It has been said that the purpose of requiring an overt act is to afford a *locus poenitentiae* so that before the act is done, one or more of the parties may abandon their design and thus avoid the penalty. 15 C. J. S., supra.

Under the Georgia statute here involved, however, the conspiracy itself constitutes the crime and apparently under the ruling by the Supreme Court in *Rollins* v. *State*, 215 *Ga.* 437, supra, once the agreement is made, the parties are subject to prosecution even though the design or enterprise might immediately thereafter be completely abandoned, no loss of any kind result to the State, and nothing whatever be done towards accomplishing the purpose and object of the conspiracy.

Since, however, the conspiracy itself constitutes the crime and since the statute as originally enacted has been modified by the adopted Codes in which it has been codified so as to provide that the object of the conspiracy may be to defraud the State of "property" in its broader sense, it seems clear that an indictment charging a conspiracy under the statute must with particularity set forth the exact property of the State at which the conspiracy is aimed. Were an overt act necessary to complete the offense, a different rule might obtain. Here the statute makes entering upon the agreement a felony. That being so, the indictment charging the crime must with particularity set forth the nature of the agreement and the exact end to be accomplished thereby.

Manifestly, it would not be sufficient to say in an indictment that the defendants conspired to defraud the State. The

gravamen of the offense is the conspiracy to defraud the State of *property*. That is what makes it necessary to set forth with particularity the property of the State at which the conspiracy is aimed.

The statute, enacted in 1872, no doubt was prompted by the corruption which had been notorious in Georgia during the regime of the so-called "Reconstruction Government." It may be significant that so far as the reported cases indicate there was never a prosecution under the statute from the time of its enactment until the return of the indictment in *Rollins* v. *State, 215 Ga.* 437, supra.

We think, therefore, that the statute was obviously not intended—and it has not been construed as intended—to prevent political activity on the part of State officials. The Constitutional officers of the State, with the exception of the Governor, may succeed themselves in office. This is the general rule with respect to public officers. It would, we think, require a strained construction of a criminal statute, required by the general rules of construction to be strictly construed, to say that it was intended to prevent a public officer of the State from campaigning for re-election or to prevent his employees from supporting him for re-election. The trial judge seemed to be of this opinion. He struck from the indictment the charge of conspiracy to defraud the State of the services of various employees because of their political activity while drawing compensation from the State. In this, we think, the trial judge was right. But the indictment was permitted to stand insofar as it charged the defendants with conspiracy to defraud the State of money by means of having employees in the office of the Comptroller General engage in political activities while traveling in Georgia at the expense of the State.

As we have seen, the statute was not intended to prevent an employee of the State from engaging in political activities while traveling over the State in the performance of his official duties, even though traveling at the expense of the State, since it was not designed to prevent public officers or public employees from engaging in political activity, and was not aimed at the services of employees but at property of the State. Had the purpose of

this statute been to prohibit political activity, there would have been no necessity for the inclusion of such a provision in the Merit System Act. Code, Ann., § 40-2207.

We do not by this mean to say that if persons coming within the purview of the statute, such as the defendants here, entered upon an agreement whereby a particular public employee would be required to make a specific trip at the expense of the State, solely for political purposes, no violation of the statute would be involved. No such question is before us. Even then, however, it might well be said that the loss sustained by the State, if any, would be of the services of the employee rather than the compensation paid to him, or the expense of his travel to the place where the services should have been rendered.

We do say, however, that an indictment charging a conspiracy to defraud the State of property, i.e., money, by having public employees travel at State expense while engaged exclusively in political activities must charge a complete contract and agreement to accomplish the unlawful end and that to do so, it is necessary to allege not only the names of the employees, but the amount of State money each was to expend in furtherance of the conspiracy, so as to charge with distinctness the property of the State of which it was to be defrauded by means of the conspiracy.

Were the rule different so as to require that the conspiracy be made definite by allegation and proof of some overt act, a contrary ruling might follow.

But such is not the rule under the decision by the Supreme Court in the *Rollins* case. The conspiracy itself constitutes the crime. As said by the Supreme Court in that case, "The gist of a conspiracy is the corrupt agreement between two or more persons to commit an act prohibited by law." The indictable offense here is a conspiracy "to cheat or defraud or illegally obtain from . . . the State", "any property belonging to the State."

It necessarily follows, therefore, that in order to charge a criminal conspiracy, the indictment must set forth with particularity the property of the State of which it is to be defrauded. It is alleged here that certain employees to be selected by one defendant were to travel at State expense, not in performance

of their duties, but for political purposes, and there would result a loss of money by the State. The indictment is attacked as vague and indefinite because it does not allege the names of the employees who would travel or how much each of them was to be paid out of State funds to cover their expenses while traveling on political missions. We think the indictment was defective for failure to so allege and that the court erred in overruling the demurrers raising these questions.

See in this connection *Moore* v. *State*, 54 *Ga. App.* 218 (187 S. E. 595); *Johnson* v. *State*, 90 *Ga.* 441 (1) (16 S. E. 92); *O'Brien* v. *State*, 109 *Ga.* 51 (35 S. E. 112); *Brown* v. *State*, 116 *Ga.* 559, 561 (42 S. E. 795); *Amorous* v. *State*, 1 *Ga. App.* 313 (57 S. E. 999); *Taylor* v. *State*, 123 Ga. 133 (51 S. E. 326).

Moreover, a State official charged with malfeasance must be served with an indictment specifically setting forth the merits of the complaint against him. Code, Ann., § 40-1617; Code § 89-9908.

It should be noted that in the *Rollins* case there was set forth the exact amount of money at which the conspiracy was aimed. Even then, one of the dissenting justices did not think the indictment was sufficient because it did not set forth with particularity the exact property of the State at which the conspiracy was aimed. Here the indictment describes, nothing, and it does not put the defendants on notice of what they are required to meet. They are not informed as to what employees they had conspired to have travel at State expense or how much money, "property of the State," they conspired to obtain from the State by fraudulent means. In these respects, the indictment was not sufficient, and the court should have sustained the grounds of demurrer raising these questions.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*