McNISH *v.* THE STATE.

Where, according to the usual course of business of a partnership which transacted a wharfage business for itself and represented a transportation company in the collection of freights, a clerk of the partnership was in the habit of delivering bills of lading to customers and receiving from them checks in prepayment of bills for freight and wharfage; and, acting in conformity to this custom, such clerk received a check from a customer payable to the order of one of the partners (agent) or bearer, collected the money and fraudulently converted the same to his own use, he was not guilty of the statutory offence of larceny after a trust delegated upon an indictment charging that he was entrusted by the customer with the check to be applied for the customer's use and benefit, the trust created by the transaction as a whole not being one between the customer and the clerk, but one between the partnership and the clerk.   The delivery of the check and the collection of the money upon it operated as a payment of the bill against the customer, and furnished a fund for which the clerk was accountable to his employers.

January 11, 1892.

Criminal law. Larceny after trust. Before Judge FALLIGANT. Chatham superior court. December term, 1890.

Reported in the decision.

C. N. WEST, for plaintiff in error.

W. W. FRASER, solicitor-general, *contra.*

BLECKLEY, Chief Justice.

By disposing of the general grounds in the motion for a new trial, all the special grounds, in so far as they are verified by the presiding judge, will be ruled incidentally. They will need no separate discussion.

The indictment being for larceny after a trust had been delegated, in order to convict the accused, it was necessary to prove the creation of the trust described in the indictment, and a fraudulent breach of it in the manner alleged. To charge one trust and prove another would not suffice. *Carter* v. *The State*, 53 *Ga.* 326; *McCrary* v. *The State*, 81 *Ga.* 334. The indictment alleges that McNish was entrusted by Raymond Judge with a certain check drawn by Judge on a bank, and made payable to the order of Wm. E. Guerard, agent, or bearer, "for the purpose of applying the same for the use and benefit of said Raymond Judge," etc. By the evidence it appears either directly or by fair inference that Guerard, the payee of the check, was a member of the firm of James B. West & Co., a partnership which transacted a wharfage business for itself, and represented the Merchants' and Miners' Transportation Company in the collection of freights; that McNish was a clerk of James B. West & Co., and was in the habit, in the usual course of business, of delivering bills of lading to customers and receiving checks from them in prepayment of bills of freight and wharfage; that one of these customers was Raymond Judge, from whom McNish, acting in conformity to the custom, received the check described in the bill of indictment, the amount of the check representing a bill for $330.83, of which bill $321.62 was for freight accruing to the Merchants' and Miners' Transportation Company, and $9.21 was for wharfage due to Jas. B. West & Co. It is manifest. that Judge dealt with McNish, not as his own bailee, servant or agent, but as the clerk and representative of Jas. B. West & Co. His object was, not to create a trust, but to pay a debt. He did not rely upon McNish to apply the check, but applied it himself. What he expected McNish to do was to deliver the check to the payee or to Jas. B. West & Co., or to col-

lect it for their use and the use of the transportation company. When McNish did collect it, if not before, the debt was paid, and he held the money, not for the use of Judge, but for the use of Jas. B. West & Co., his employers. He was accountable to them. At their suit he could have been compelled to pay over the money, but at the suit of Judge no recovery could have been had against him, for the reason that the debt of Judge being paid, the bill collected was discharged. He never for a moment held the money for the use of Judge or as his bailee. There was certainly a trust relation, but it was not between Judge and McNish, but between McNish and his employers. They entrusted him to make collections from customers in such cases, and to them he was accountable for the faithful execution of his trust. True the evidence shows that there was no express authority conferred upon him to collect this particular bill against Judge, but it does not appear that he was forbidden to collect it, and it is affirmatively shown that he dealt with Judge in this instance as he had in others, and according to the usual course of business. These facts served to invest him with authority to represent his employers in this particular transaction, and to cast upon him all the responsibilities, civil and criminal, which attached to the exercise of such authority. We do not mean to suggest that he was ac-accountable only to Jas. B. West & Co. Doubtless so long as he had not accounted to them, he would also be accountable to the transportation company to the extent of its interest in the ownership of the fund; but the controlling fact is that he was not answerable to Raymond Judge, and that no trust between him and Judge was created.

The court erred in not granting a new trial.

*Judgment reversed.*