## TURNER et al. v. SECURITY PLUMBING CO. et al.

1. The petition as a whole and as amended sets forth a case entitling the plaintiff to relief in equity.

2. The court properly overruled the ground of demurrer that there is a misjoinder of causes of action "in that it is attempted to set forth in the petition separate, distinct, and different alleged creditors and

---

Appeal and Error, 3 C. J. p. 793, n. 36; 4 C. J. p. 553, n. 35.
Conspiracy, 12 C. J. p. 629, n. 96.
Courts, 15 C. J. p. 1154, n. 75.
Equity, 21 C. J. p. 258, n. 15; p. 389, n. 79; p. 419, n. 95; p. 423, n. 40.
Injunctions, 32 C. J. p. 319, n. 31; p. 328, n. 24; p. 329, n. 27.
Pleading, 31 Cyc. p. 83, n. 16; p. 96, n. 36.

debtors of these defendants, who are alleged to have separate, distinct, and different claims and causes of action against the defendants from the one which is attempted to be set up in the plaintiff's petition." The relationship of the different creditors to the petitioner and the defendants, together with the rights of all of the creditors against the defendants, in the event they can join in the case as plaintiffs and show that they are affected by the alleged conspiracy, is such as to remove any ground for the contention that there is a misjoinder of parties and causes of action.

3. All the defendants were properly made parties, and there is no merit in the contention that there is a misjoinder of parties defendant.

4. The ground of demurrer raising the point that the petition shows upon its face "that at the time the plaintiff is alleged to have sold its material, and at the time the indebtedness which is the basis of this suit is alleged to have been incurred, the plaintiff had actual and constructive notice of the status of E. R. Gallimore, one of the defendants, and these defendants and their respective interests in the property set out in the plaintiff's petition, and that, having such notice and knowledge, they elected to deal with and sell to the said Gallimore and not to these defendants [Turner and Jones], and can not now be held to complain of their action or be permitted to look to these defendants for the alleged indebtedness," was also properly overruled.

5. There is no merit in the contention that "the petition fails to set forth sufficient facts to warrant this court in granting to the plaintiff an injunction and restraining order as prayed for; and further fails to show that the plaintiff will ever suffer any irreparable injury or damage should such restraining order or injunction not be granted."

6. The petition contains sufficient allegations of residence of the defendants.

7. Taking the allegations of the petition and the amendments thereto as true, it appears that petitioner has not a complete and adequate remedy at law.

8. Defendants demurred to paragraph 3 of the petition, which is as follows: "In said City of Atlanta in Fulton County, Georgia, there is a tract of land known as Olympian Hills Subdivision, most of which is owned jointly by the defendants Turner & Jones, and most of which has been registered under what is known as the Torrens land act of the State of Georgia." This is demurred to upon the ground that the allegations therein are irrelevant and immaterial to the issues involved in this suit. This paragraph, taken in connection with the other allegations in the petition, in so far as it alleges that the subdivision of the tract of land referred to is owned by the defendants, Turner & Jones, is not immaterial and irrelevant.

9. There are demurrers to the parts of the petition referred to in paragraphs 22, 23 B, C, F, I, and L, 25, 27 E, C, F, G, H, I, and K, 28 A, 29 E, 30, and 35 of the demurrer. These demurrers were sustained except as to stated portions of paragraphs 30 and 35, but the right to amend within 30 days was allowed petitioner by the order, with privilege to the defendants to renew their demurrers. After this order was passed, amendments were filed by the plaintiff, which do not

appear in the bill of exceptions and which the judge allowed subject to objection and demurrer; but the court refused to order these amendments to be sent up as a part of the record. Nor does it appear that any question is raised as to the sufficiency of the last amendments filed to meet the special demurrers that were sustained, and therefore no ruling is made as to these.

10. Special demurrers to other paragraphs of the petition were properly overruled.

11. The pendency of the bankruptcy proceedings, and the steps taken by the trustee in bankruptcy duly appointed for the defendant Gallimore in the United States court, did not deprive the court in which this petition was filed of jurisdiction, in view of the orders passed by the U. S. court in reference to the matter.

No. 5975. JANUARY 12, 1928.

Equitable petition. Before Judge Pomeroy. Fulton superior court. February 28, 1927.

*A. S. Grove,* for plaintiffs in error.

*George B. Rush, Augustine Sams, Bryan & Middlebrooks, George M. Wilson, Pearce Matthews, Efurd & Phillips,* and *William J. Davis Jr.,* contra.

BECK, P. J. On August 14, 1926, the Security Plumbing Co. filed an action in Fulton superior court against E. R. Gallimore, H. H. Turner, and L. L. Jones, seeking to secure a general judgment for certain material alleged to have been furnished and work performed under certain contracts between the plaintiff and Gallimore, copies of which are attached to the plaintiff's petition, and further to establish a lien for material and labor on certain properties referred to in the petition, the legal title to which properties was alleged to be in the defendants Turner and Jones. In the same suit was set up a claim for damages resulting from an alleged contract between the plaintiff and Gallimore with reference to furnishing and installing certain plumbing on one of the pieces of property referred to in the petition. Plaintiff prayed for injunctions restraining and enjoining the defendants from disposing of the properties referred to, and restraining and enjoining Turner and Jones from foreclosing their retention-of-title contracts on said properties, and asked that a receiver be appointed to take charge of the properties, to sell them, and to distribute the proceeds of sale to the creditors holding liens thereon. Upon the filing of the petition a temporary receiver was appointed on ex parte hearing, without notice to the defendants. An interlocutory

hearing upon the appointment of a receiver has not been held, but the receiver so appointed is in possession of the properties.

Prior to the filing of this petition E. R. Gallimore filed a voluntary petition in bankruptcy in the district court of the United States for the northern district of Georgia. In his schedules he listed as his own the properties heretofore referred to, subject to certain outstanding conditional contracts of sale by Turner and Jones, covering the purchase-price of the properties.

Plaintiff's petition sets up an alleged conspiracy as existing between Gallimore on the one part and Turner and Jones on the other part, under which it is claimed that certain contracts of sale were executed by Turner and Jones to Gallimore on certain described properties; that these contracts, while purporting on their face to be valid and subsisting, were not such in reality; that Gallimore upon the execution of such contracts went into possession of the properties, and as the purported owner thereof made with the plaintiff certain contracts which are attached to the petition as exhibits; that Gallimore represented himself to be the owner of the properties, and the plaintiff, relying upon this representation, entered into the contracts; and that as a part of said conspiracy, after the procurement of the contracts from the plaintiff and the furnishing of the material and equipment thereunder, Gallimore was to go into bankruptcy, and Turner and Jones would then foreclose on the properties under their contract of sale, and would thereby defeat the plaintiff's claim through the legal process of law. There are various other allegations in the petition with reference to schemes, devices, fraud and deceit.

On September 24, 1926, Turner and Jones, subject to their special plea to the jurisdiction theretofore filed, and without waiving it, filed general and special demurrers to the petition. These demurrers were sustained in part and overruled in part. To the latter part of the order Turner and Jones excepted.

1. The general and special demurrers embrace some fifty or sixty grounds. The first eleven grounds are general in their nature. Whether the court erred in overruling them depends to a large extent upon whether the petition set up an equitable cause of action. Considering all the·allegations and the accepted definitions of conspiracy, we have reached the conclusion that the petition as amended sets forth a conspiracy upon the part of Turner,

Jones, and Gallimore to do an unlawful act. Numerous text-writers and courts have defined conspiracy. In their written argument counsel for the plaintiffs in error invoke the following: "It has been said that there is perhaps no crime an exact definition of which it is more difficult to give than the offense of conspiracy; a difficulty resulting in a large measure from the fact that the law on the subject of conspiracy, except where settled by legislative enactment, is, beyond certain limits, in a very uncertain state; the cases beyond such limits, which have been adjudged to be conspiracies, appear, it has been said, 'to stand apart by themselves' and to be 'devoid of that analogy to each other which would render them susceptible of classification.' However, the essentials of a conspiracy, whether viewed with regard to its importance in a criminal prosecution or its significance in a civil action for damages, are commonly described in this general language: It is a combination between two or more persons to do a criminal or unlawful act or a lawful act by criminal or unlawful means. In other words, to constitute a conspiracy the purpose to be effected by it must be unlawful in its nature or in the means to be employed for its accomplishment. The foregoing definition perhaps is not perfectly accurate, but is sufficient as a general description of the offense. 'The offence thus defined excludes only confederations to accomplish lawful objects by lawful means; the offence includes all possible unlawful confederations.'" 12 C. J. 540, § 1. This court has also defined conspiracy as being an offense not materially different from the one just described. In *Brown* v. *Jacobs,* 115 *Ga.* 429, 433 (41 S. E. 553, 57 L. R. A. 547, 90 Am. St. R. 126), is the following: "A conspiracy has been defined as a combination either to accomplish an unlawful end, or to accomplish a lawful end by unlawful means. This form of expression was used by Lord Denman in Rex *v.* Seward (1834), 1 Adol. & E. 706; Jones's case (1832), 4 B. & Ad. 345. And though he is reported to have expressed himself somewhat differently in other cases (see passing remark in Reg. *v.* Peck (1839), 9 Adol. & E. 686), this definition has been very widely accepted and quoted. See Bouv. L. D. 'Conspiracy.' Mr. Eddy, in his recent work on Combinations, gives the following definition as comprehensive in its nature and including both civil and criminal conspiracies: 'Conspiracy is the combination of two or more persons

to do (a) something that is unlawful, oppressive, or immoral; or (b) something that is not unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means; (c) something that is unlawful, oppressive, or immoral, by unlawful, oppressive, or immoral means.' 1 Eddy, Comb. §§ 171, 340." Applying these representative statements of conspiracy to the facts of this case as set forth in the petition, we are of the opinion that a conspiracy upon the part of the defendants was sufficiently alleged to withstand a general demurrer.

It is argued by counsel for plaintiffs in error that the allegations of the petition make it apparent that there was no conspiracy, "because there is entirely lacking any allegation showing a combination between two or more persons to do a criminal or unlawful act, or a lawful act by a criminal or unlawful means." With this contention we can not agree, for it is distinctly alleged in the petition that Turner and Gallimore "entered into a conspiracy to defraud the materialmen who furnished the material for said houses, and that it was a general plan between them which applied to all of said houses, and was one general scheme and conspiracy covering the entire building operations on said lots," which was carried out in this manner: Turner and Gallimore entered into a contract for the sale of the lots by Turner and Jones to Gallimore. No record of this contract appears, but the purported contract provided "that Gallimore should build a house on each of the lots, and that Turner and Jones should advance money for the pay-rolls thereon, and that Turner and Jones were to convey title to said lots only when they were paid the full purchase-price of each lot and all money advanced for pay-rolls." It is further alleged that the contracts between Turner and Jones and Gallimore were not made in good faith and were never intended as bona fide agreements, but were made for the distinct purpose of enabling the parties to carry out a scheme and conspiracy to defeat and defraud materialmen; that as a part of this conspiracy it was the agreement and intention of Turner and Gallimore: "(1) That in the building of said houses they would delay payment of as many of the bills for labor and material as possible, so that when said houses were completed no materialmen would have been paid except when it seemed necessary to make some payments to keep the work going on and to induce them to furnish materials on

credit. (2) That in carrying out this part of their conspiracy they would, as they did, resort to every possible trick, scheme, and device at their command to avoid payment of material and labor bills as the work progressed. (3) That they would, as they did, stipulate in their purported contracts for the sale of the lots to Gallimore, as the purchase-price of said lots highly inflated amounts, approximately twice the actual value of said lots. (4) That what is known as the pay-roll account, which under the terms of said fraudulent contracts Turner and Jones were to advance, should be 'padded,' that is to say falsely increased over and above the actual payments for labor, so as to make it appear that more had been paid for labor than actually was paid. (5) That wherever possible all contracts for labor and material should be made by Gallimore in his own name as owner of the property. (6) That, for the purpose of inducing materialmen to furnish material for the houses, Turner and Gallimore would undertake to create the impression that Gallimore had purchased and paid for said lots and was financially able to build and pay for the houses thereon. (7) That said houses should be as nearly completed as it would be possible to do without being finally completed, so that final payments on contracts for material and labor (the bills for which became due and payable on completion of the jobs) would not have to be paid on any of the houses until all were nearly completed, and that at such a stage Gallimore should abandon said houses and go into bankruptcy or otherwise place himself in a position where labor and material bills could not be collected. (8) That Turner and Jones should then, with padded pay-rolls and inflated lot values, undertake to subject said houses to the fraudulent lien created by said sham contracts for inflated lot values and padded pay-rolls, and, by claiming practically the entire values of said property as the amount of the unpaid purchase-price of the lots and the pay-rolls advanced, leave nothing from which materialmen could make their money for the materials which went into said houses."

It is further alleged that pursuant to this fraudulent conspiracy Turner and Gallimore represented to petitioner that Gallimore was the owner of the lots, and contracted with petitioner in the name of Gallimore for material and labor, the items of which the petition specifies; that the amount of material furnished by petitioner and other materialmen was as set out in the petition; that

"Turner had full knowledge of the fact that Gallimore was purchasing material and contracting for labor on such representations, and that he encouraged such belief on the part of materialmen and laborers, and by innuendo and suggestion, as well as by direct misrepresentations, undertook to create the impression that the said Gallimore not only owned said lots but that he was financially able to build and pay for said houses, although both the said Turner and the said Gallimore well knew said statements to be false;" that in order to carry out the conspiracy Turner and Gallimore specified in each of the alleged contracts for the purchase of said lots approximately twice the real values thereof, and now claim that Gallimore owes Turner and Jones some $35,000 for the purchase-price thereof; that more than $42,000 is due materialmen whose liens are recorded; that Gallimore in his bankruptcy schedule lists said materialmen liens as being "subject to the claim of L. L. Jones and H. H. Turner for a debt of $85,000," and sets out that Turner and Jones to secure said debt retained title to the real estate involved.

The above-recited facts, as given by the petition, are sufficient, in our view, to set up a conspiracy on the part of Gallimore, Jones, and Turner to defraud creditors. The scheme alleged may be rather awkward, but that does not prevent a court of equity from taking jurisdiction to give relief to creditors like the petitioner and those who might properly join with it. The petitioner is well in a position to invoke the aid of equity, and in such a court its rights may be asserted for their establishment, as could be also the rights of others similarly situated, by intervention in this suit. Therefore the court did not err in overruling the general demurrers.

2-11. The rulings made in the headnotes 2 to 11, inclusive, require no elaboration.

*Judgment affirmed. All the Justices concur.*