23354. CLACK *v.* THE STATE.

Decided August 4, 1933.

*W. L. Nix, W. N. Oliver,* for plaintiff in error.
*Robert McMillan, solicitor-general,* contra.

Guerry, J. ■ E. R. Clack was indicted for and convicted of the offense of larceny after trust. The indictment alleged: "The grand jurors [of Hall county] . . charge and accuse E. R. Clack, of the county and State aforesaid, with the offense of larceny after trust, for that the said accused, on the 12th day of November in the year 1931, in the county aforesaid, did then and there, unlawfully and with force and arms, after having been intrusted by W. S. Phillips and W. P. Phillips with a certain spotted cow, dehorned, named Pet, of the value of $30.00, and with two red Duroc pigs of the value of $22.00, and with $5.00 in money of the value of $5.00, for the purpose of applying the same for the use and benefit of the said W. S. Phillips and W. P. Phillips by turning the same and the proceeds thereof over to the Gainesville Chevrolet Company in settlement of a note owed said company by said W. P. Phillips, did fraudulently convert the same to his own use." The testimony of W. S. Phillips, sworn for the State, at the most is very vague and indefinite, if not contradictory. He swore that his son, W. P. Phillips, was indebted to the Gainesville Chevrolet Company by note, and that the transaction alleged in the indictment took place at the home of his son on the county line

of Barrow and Gwinnett counties.   On direct examination he swore
that he sold his son the cow and the pigs and that his son sold them
to the defendant, although his testimony further shows that his son
was away at the time of this transaction and that he (the son)
knew nothing of the same and that he alone agreed with the de-
fendant on the price.   He further swore that $5 in money was
turned over to the defendant, and on cross-examination swore that
the defendant gave him a check in purchase of the cow, the pigs
and the money.   However, in the latter part of his testimony he
swore that the defendant was to turn the $5 over to the Gainesville
Chevrolet Company.   The defendant in his statement substantiates
this testimony as to the $5, but contends that he performed the
trust by turning the same over to the Gainesville Chevrolet Com-
pany.   This was denied by the company.   The State proved a de-
mand on the defendant in Hall county and his failure to comply
therewith.   One of the grounds of the motion for new trial con-
tends that the trust was created on the county line of Barrow and
Gwinnett counties, and that there was no evidence sufficient to
prosecute the defendant in Hall county.   In *Raiden* v. *State,* 1 *Ga.
App.* 532 (57 S. E. 989), it was held that where A was intrusted
with money in Madison county, for a purpose to be performed in
that county, he could not be legally prosecuted in Clarke county,
where there was no evidence to show that he ever brought the prop-
erty in Clarke county or that a conversion took place in that coun-
ty, and that this was true although there was a demand on the de-
fendant and a refusal in the latter county.   It was also held that
under an indictment for larceny after trust, where it was alleged
that the defendant converted the property to his own use, the venue
of the crime should be laid in the county where the crime was con-
summated, and that the crime was consummated where the con-
version took place.   With respect to the venue of the crime of
larceny after trust, it seems to be settled that where a person is
intrusted with property in a certain county, whether the trust is to
be performed in that or another county, the jury, in the absence
of any showing to the contrary, would be authorized to find that
the conversion took place in the county where the trust was created.
See, in this connection, *McCoy* v. *State,* 19 *Ga. App.* 32 (90 S. E.
737); *Keys* v. *State,* 112 *Ga.* 392 (37 S. E. 762, 81 Am. St. R.
63); *Soule* v. *State,* 71 *Ga.* 267; *Bowen* v. *State,* 16 *Ga. App.* 179

(84 S. E. 793) ; *Chancey* v. *State,* 18 *Ga. App.* 328 (89 S. E. 461). On a first reading, the case of *Keys* v. *State,* supra, would seem to be authority for the case at bar. It was there held, where a person is intrusted with money in X county, to be delivered to a person in another county (the other county being out of the State), that upon a showing that the money had not been delivered, the person so intrusted could be prosecuted in X county, as the jury would be authorized to find that the conversion took place in that county, although the defendant testified that he carried the money to the other county and delivered it. This decision, however, nowhere holds that the venue of the crime could not be laid in the county where the trust was to be executed. We hold in this respect that where money or any other article of value is intrusted to a person in one county, for a definite purpose to be performed in another county, and there are circumstances to show a conversion in the latter county, such as a demand and a failure to pay, coupled with a confession that the money was brought into the latter county, the jury would be authorized to find that the conversion took place in that county, and that therefore the venue was properly laid and proved in the case at bar. As was aptly said by Hoyt, J., in State *v.* Whitman, 9 Wash. 402 (37 Pac. 659) : "It would be a difficult matter in almost all cases for the State to show the exact location of the defendant at the time he appropriated the money to his own use, and when it is made to appear, as in this case, that his duty with reference to the money was confined to the county in which the prosecution is had, it is enough to at least prima facie establish the fact that the conversion was in the same county."

The next question raised by the defendant is whether there is a fatal variance between the allegations of the indictment and the proof submitted on the trial, which in fact amounts to the question whether the verdict is contrary to the law and evidence. It is well settled that in order to convict under a larceny after trust indictment the State must prove the trust as laid in the indictment. To allege one trust and prove another would be fatal. The indictment here alleges, a trust created between W. S. Phillips and W. P. Phillips, on the one hand, and E. R. Clack on the other, and the indictment further alleges that the trust was created "for the purpose of applying the same for the use and benefit" of W. S. and W. P. Phillips. It is well to say here, before going further,

that the solicitor-general abandoned that part of the indictment which charged the defendant with being intrusted with a cow and two pigs, as the evidence conclusively shows that the defendant purchased them. There seems to be a slight conflict in the evidence as to whether the $5 was included in the check given by the defendant to W. S. Phillips; therefore the jury was authorized to find that it was not. The evidence disclosed that W. P. Phillips was not involved in the transaction between W. S. Phillips and the defendant, that he was away in Atlanta and knew nothing about it, that no previous arrangements were made by him with the defendant with reference to the transaction. There is a total lack of evidence showing the ownership of the $5; and, due to the fact that W. P. Phillips, the son, had not discussed the matter with W. S. Phillips, it is to be presumed that he was acting for himself as the father of W. P. Phillips in delivering the $5 to the defendant. We think, from the authorities that we have been able to read, and the strict rule that has been applied in these cases, that there was a fatal variance, and that the verdict was contrary to the law and evidence. For cases in support of this holding, see *McNish* v. *State*, 88 *Ga.* 499 (14 S. E. 865); *Carter* v. *State*, 53 *Ga.* 326; *White* v. *State*, 19 *Ga. App.* 230 (91 S. E. 280); *Rucker* v. *State*, 95 *Ga.* 465 (20 S. E. 269). If the theory is advanced that W. S. Phillips was acting merely as the agent of W. P. Phillips in delivering the money, the case of *McCrary* v. *State*, 81 *Ga.* 334 (6 S. E. 588), would draw us to the same conclusion already reached. It was there held that "The charge in the indictment being that defendant, having been intrusted by Emma Lipscomb with a certain amount of money to be applied to the use and benefit of Ike Lipscomb, to whom it belonged, fraudulently converted it, etc., was not sustained by the evidence, which shows that the confidence was reposed in defendant and the trust delegated to him by Ike Lipscomb, and that Emma Lipscomb simply acted as agent of Ike in handing defendant the money, which belonged to Ike."

■ Grounds 5, 6, and 7 of the motion for new trial are without merit. We might say, however, in passing, that proof that money was intrusted to a person, where it is further shown that the purpose of the trust was not performed, and a demand for the money and a failure to pay, constitute, in law, direct proof of a conver-

sion. The judgment is reversed for reasons stated in the second headnote.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*