## 20574. ROLLINS *v.* THE STATE *et al.*

CANDLER, Justice. J. W. Brinson, Jr., and Raleigh Rollins were jointly indicted in Fulton County for the offense of a conspiracy to defraud the State of a stated amount of its money, a felony. In substance the indictment alleges that, on July 10, 1957, and in Fulton County, the defendant Brinson, as Director of Georgia's Department of State Parks, did feloniously conspire and agree with the defendant Rollins to defraud, cheat, and illegally obtain from the State $3,000— property of the State of Georgia, and that the plan or scheme formulated by them for the purpose of illegally obtaining that amount of the State's money was in substance as follows: The defendant Rollins from time to time, after obtaining purchase orders in the name of Hart-Rollins Furniture Company from the State's supervisor of purchases for specified park furniture, playground equipment, and household furnishings and furniture, would not deliver all of the articles specified in such purchase orders, but only portions thereof; that the defendant Rollins would present invoices to the defendant Brinson, as such director, for payment out of State funds of all articles specified in the purchase orders; that the defendant Brinson was to receive the invoices so presented, mark them for payment, and by checks drawn on State funds, and signed by himself as such director, pay such invoices in full to Hart-Rollins Furniture Company, with knowledge on the part of both defendants that only a portion of the articles specified in such purchase orders had been delivered to the Department of State Parks, and that the remaining portion of such articles would not be delivered to it; all of said acts of accused being contrary to the laws of said State, the good order, peace and dignity thereof. When arraigned for trial and before pleading to the merits

of the indictment, the defendant Rollins demurred and moved to quash the indictment on grounds which are fully summarized as follows: (1) Sections 26-4201 through 26-4204 of the official Code of 1933, which were codified from an act approved August 23, 1872 (Ga. L. 1872, p. 25), are all unconstitutional and therefore null and void because they offend the due-process clauses of the Constitutions of the United States and the State of Georgia, since the language of the act is so broad, loose, vague and indefinite "that it fails to identify or specify any particular act or thing which may constitute a crime thereunder [and so] as to establish any ascertainable standard of conduct which is required; but on the contrary, subjects all citizens to the possibility of indiscriminate prosecution for all manner of agreements deemed by prosecuting officers to be inimical to the welfare of the State, whether executed or unexecuted, intentional or unintentional, explicit or inferred, evil or legitimate, and whether made with the State and its agents or between individuals, regardless of pecuniary loss, and without attempting to define the type of fraud condemned, whether legal fraud, technical fraud, or moral fraud," and because "the statute under which the indictment is drawn is so imperfect as to render it impossible of execution, and so uncertain that it is impossible to ascertain the legislative intent and is, therefore, insufficient to constitute a crime"; (2) the allegations of the indictment are too vague, uncertain, and indefinite to charge a penal offense and to apprise the defendant of the offense charged against him, and for that reason he is unable to prepare a defense to the charge, and if tried thereon, would be unable, if subsequently prosecuted for the same transaction, to avail himself of a former conviction or acquittal; and (3) the indictment is duplicitous, since its allegations do not charge a continuing offense, "but a number of similar offenses, separately committed over a long period of time." The demurrers and the motion to quash were overruled and denied and the exception is to that judgment. *Held*:

1. Section 26-4201 of Georgia's official Code of 1933, which is a codification of section 1 of the 1872 act, provides: "Any two or more persons who shall conspire or agree to defraud, cheat, or illegally obtain from the State or any county thereof, or from any public officer of this State, or any county thereof, or any person exercising the duties of any such office,

any property belonging to the State or county, or under the control or possession of said officers as such, shall be punished by imprisonment and labor in the penitentiary for not less than two years nor more than 10 years." The adoption of the Code of 1933 had the legal effect of re-enacting the act of 1872, and there is not now and never has been any provision either in the Constitution of the United States or in any one of Georgia's several Constitutions which prohibited the legislature of this State from enacting a statute making a conspiracy between two or more persons to commit the act prohibited by section 1 of the 1872 act (Code § 26-4201) a penal offense. And there is likewise no merit in the contention that Code § 26-4201 is unenforceable and therefore void, because it is too vague, indefinite, and uncertain in its terms to constitute a crime, and so imperfect as to render its enforcement impossible. Respecting the charge against the defendant in this case, the attacked Code section clearly states that, if any two or more persons conspire or agree to defraud, cheat, or illegally obtain from the State, or from any public officer of this State, or any person exercising the duties of any such office, any property belonging to the State or under the control or possession of said officers as such, they shall be punished by imprisonment in the penitentiary for not less than 2 nor more than 10 years. In *Brown & Allen* v. *Jacobs Pharmacy Co.*, 115 *Ga.* 429, 433 (41 S. E. 553, 57 L. R. A. 547, 90 Am. St. Rep. 126), is the following: "A conspiracy has been defined as a combination either to accomplish an unlawful end, or to accomplish a lawful end by unlawful means." For a similar definition of a conspiracy, see *Turner* v. *Security Plumbing Co.*, 165 *Ga.* 479 (141 S. E. 291); and *Horton* v. *Johnson*, 192 *Ga.* 338, 346 (15 S. E. 2d 605). The gist of a conspiracy is the corrupt agreement between two or more persons to commit an act prohibited by law. *Chappell* v. *State*, 209 *Ga.* 701 (1) (75 S. E. 2d 417); 11 Am. Jur. 564, § 31. It is an indictable offense in this State for any person to cheat and defraud the State of any of its money or other property by using any deceitful means or artful practice. Code § 26-2801. And under the provisions of Code § 26-2801, it is a felony for any officer, servant, or other person in any public department, station, or office of government of this State to embezzle, steal, secrete, or fraudulently take and carry away any money or other property or effects be-

longing to the State. Hence, the conspiracy which Code § 26-4201 prohibits and punishes is clearly a substantive penal offense in this State, which does not offend the due-process clause of the Constitution of the United States or the due-process provision of Georgia's Constitution for any reason stated in the constitutional attack made on it by the defendant's demurrer.

2. There is also no merit in the constitutional attack on Code § 26-4204, which declares that the offense described by Code § 26-4201 is complete when the conspiracy is effected, and shall be punished whether the same is carried into effect or not. The criminal offense of conspiracy is complete at common law as soon as the confederacy or combination is formed. O'Connell v. United States, 253 U. S. 142 (40 S. Ct. 444, 64 L. Ed. 827); Hagan v. O'Neil, 255 U. S. 52 (41 S. Ct. 222, 65 L. Ed. 497); 11 Am. Jur. 546, § 6. The conspiracies which are made substantive penal offenses by the Sherman Act (26 Stat. 209, 15 U.S.C. § 1) are complete and effective when the combination is entered into and are punishable as such even though not followed up by an overt act. See Nash v. United States, 229 U. S. 373 (33 S. Ct. 780, 57 L. Ed. 1232), where the court's opinion was prepared and delivered by Justice Holmes and it was held: "The Sherman Act punishes the conspiracies at which it is aimed on the common law footing and does not make the doing of any act other than the act of conspiring a condition of liability. In this respect it differs from § 5440 [of the revised statutes] and the indictment need not aver overt acts in furtherance of the conspiracy." And it is generally held by the courts of this country that no overt act is necessary to complete the offense of conspiracy unless it is required by special statutory enactment. See 11 Am. Jur. 546, § 6, and the many cases cited in the author's annotation as authority for his statement of the rule that the crime of conspiracy is complete and fully effected when the corrupt agreement is made by two or more persons to commit an act which the law prohibits, where there is no statute requiring an overt act for the accomplishment of the unlawful purpose of the agreement. The appellate courts of nineteen different states, which include the courts of last resort in the States of New York, Massachusetts, Michigan, Indiana, Ohio, and New Jersey, have held that, in the absence of a statutory requirement making an overt act an essential

element of the crime of conspiracy, it is unnecessary in an indictment or information for conspiracy to aver the commission of an overt act, even though one has actually been committed. Since Code § 26-4204 does not require the commission of an overt act to complete the conspiracy which is a substantive criminal offense under the provisions of Code § 26-4201, and since the gist of the offense which that section provides for and penalizes is the corrupt agreement to do the acts it prohibits, and we hold that § 26-4204 does not offend the due-process clause of the Federal Constitution or the due-process provision of Georgia's Constitution. In so holding, we have not overlooked Code § 26-201, which declares that "A crime or misdemeanor shall consist in a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." That section and § 26-4204 both appear in the official Code of 1933. They are of equal dignity, and to give full force and effect to both sections they must be construed together, being in pari materia, and when properly construed the latter is an exception to the definition of a crime as given by the former insofar as concerns the crime of conspiracy which Code § 26-4201 provides for. Any other construction would render one of them completely meaningless, and we will not ascribe to the General Assembly an intention to adopt a Code containing inconsistent or contradictory provisions. *Daniel* v. *Citizens & Southern National Bank,* 182 *Ga.* 384 (185 S. E. 696); *DeJarnette* v. *Hospital Authority of Albany,* 195 *Ga.* 189 (23 S. E. 2d 716); *Scott* v. *Mayor &c. of Mount Airy,* 186 *Ga.* 652 (198 S. E. 693); *Barnett* v. *D. O. Martin Co.,* 191 *Ga.* 11 (11 S. E. 2d 210, 131 A. L. R. 725); *Sheffield* v. *State School Building Authority,* 208 *Ga.* 575 (68 S. E. 2d 590); *McLucas* v. *State Bridge Building Authority,* 210 *Ga.* 1, 8 (2) (77 S. E. 2d 531), and the cases there cited.

3. Section 27-701 of our Code of 1933 declares: "Every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of this code, or so plainly that the nature of the offense charged may easily be understood by the jury. . ." Tested by this rule, the allegations of the indictment against the accused are sufficient to charge a violation of Code § 26-4201. They charge the defendant and his co-indictee with having feloniously conspired and agreed

with each other to defraud, cheat, and illegally obtain from the State of Georgia a stated amount of its money on a specified date and in Fulton County, and they clearly and plainly allege the acts which this defendant and his co-indictee agreed to do in consummating such conspiracy. See *Thomas* v. *State*, 71 *Ga.* 44; *Lyles* v. *State*, 215 *Ga.* 229 (109 S. E. 2d 785). Hence, there is no merit in the attack which this defendant makes on the sufficiency of the indictment.

4. Obviously, there is no merit in the contention that the indictment is duplicitous and for that reason should be quashed. It alleges a conspiracy—a violation of Code § 26-4201, which this defendant and his co-indictee allegedly formed on a specified date in Fulton County, and the acts each agreed to do in furtherance of the conspiracy.

5. The judgment complained of is not erroneous for any reason assigned.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., and Head, J., who dissent.*

ARGUED SEPTEMBER 16, 1959—DECIDED OCTOBER 9, 1959— REHEARING DENIED NOVEMBER 4, 1959.

*Newell Edenfield, Conger & Conger,* for plaintiff in error.

*Paul Webb, Solicitor-General, Eugene L. Tiller, J. Walter Le-Craw,* contra.

DUCKWORTH, Chief Justice, dissenting. The grounds upon which my dissent is based are, briefly stated, as follows: No one has, and indeed no one can, correctly deny that our law demands that all criminal laws be strictly construed, and this means that nothing can be added to or subtracted therefrom by implication. The law under which this indictment is drawn expressly states that the agreement or conspiracy must be to take "property belonging to the State." The above rule of construction will not allow an addition to this language as is done in the indictment, to take property that will in the future belong to the State, if and when certain events occur. The exact words of the indictment refer to a conspiracy to take the property "from time to time after obtaining purchase orders." In substance, the indictment charges that this defendant conspired and agreed with Brinson that in the future, if and when property

was sold to the Parks Department, invoices would be falsified to allow collections for property not delivered. By its express terms nothing will be done and no money illegally taken unless and until a future event, to wit, purchases for parks occur. Should no future purchases occur, whereby the money intended to be taken arises, or, stated more plainly, whereby the State owns such money—the difference in the invoice and the price of the property actually delivered, then the alleged conspirators agree to take nothing. It would not be unreasonable to have expected that the future events which constitute conditions precedent to an agreement to take the money would never occur. Even the fear, without any court order directing it to be done, that the parks would be integrated might well have caused their closing, and hence precluded the future purchases without which there was no agreement to take any money. If liberty is to be secure, and if those charged with crime—the guilty as well as the innocent—are to receive fair court trials, we simply must not allow judicial expansion of criminal laws to make them cover what the terms of the law do not cover. This statute refers only to property owned by the State. This does not say or mean, as the indictment charges, property the State may or may not acquire in the future, depending upon whether or not a contemplated future event occurs.

HEAD, Justice, dissenting. Stripped to its essentials, the provisions of Code § 26-4201 are as follows: "Any two or more persons who shall . . . agree to . . . illegally obtain from the State . . . any property belonging to the State . . . shall be punished. . ." Those of Code § 26-4202 are: "Any person holding any public office who shall . . . agree with any person . . . to . . . illegally obtain from the State . . . any property . . . shall be punished. . ." The indictment here alleges that the defendants illegally agreed to obtain from the State $3,000. What three thousand dollars? Obviously not any particular three thousand dollars, in bills, in coin, in checks, in warrants, but simply the amount of money or credit with which the State intended to purchase certain definite property, listed on invoices in its possession, and of which it was, or was intended to be, defrauded, by nondelivery of the property

which it had ordered. In preparing the indictment, the State attempted to identify the $3,000 (as property of the State and accordingly, under the above Code sections, the subject matter of the conspiracy), by showing that it was a part of the money paid by the State's Supervisor of Purchases to Hart-Rollins Furniture Company for "specified park furniture and equipment." The State has thus identified its property, the subject matter of the conspiracy, as a part of a particular property belonging to it—that is, a part of all of the money which it would take to pay for all of the purchases made by the State from Hart-Rollins Furniture Company for park furniture and equipment. Yet the $3,000 in money is not identified at all until it is identified in relation to the purchase of property, and therefore it is absolutely clear to me that no identity of property has been alleged until the thing purchased has been alleged, since this, and this alone, can identify the money which is the property of the State and which is alleged to be the subject matter of the conspiracy, and thereby to distinguish it from all of the other money of the State.

Assuming that one of the alleged coconspirators testifies upon the trial of this case that he and the other defendant did agree to the conspiracy charged, a valid verdict of guilty can not be reached until the State, by proving acts pursuant to the alleged conspiracy, convinces the jury that the conspiracy in fact existed. Code § 38-121. It follows that, both as related to pleading and as related to evidence, the State must necessarily identify the property which was the subject matter of the conspiracy, for, unless the conspiracy has some subject matter to act on, it can not exist. While Code § 27-701 requires only that an indictment state the offense in the terms and language of the Code, no indictment relating to property has ever been held to be sufficient under the Code which did not describe the property sufficiently to insure its identification. An indictment for larceny which does not describe the property stolen sufficiently to identify it is subject to special demurrer. *Walthour* v. *State*, 114 *Ga.* 75 (39 S. E. 872); *Melvin* v. *State*, 120 *Ga.* 490 (48 S. E. 198). In larceny after trust cases, the particular trust must be alleged and proved. *McNish* v. *State*, 88 *Ga.* 499 (14 S. E. 865). Where

the purpose of the delivery is alleged as one thing, another purpose can not be proved on the trial. *Carter* v. *State*, 53 *Ga.* 326. The State here could not allege an agreement to fraudulently convert the State's money intended for a park bench, and prove an agreement to convert the State's money intended for a rowboat, as this is different property.

The State should not be allowed to proceed by refusing to identify any acts at all. It does not identify property to say "this is a part of a total amount of property" as to items which are not interchangeable. The State can not indict for larceny from the house by alleging that the defendant did take and carry away "a part of all of the furniture in the house consisting of chairs, tables, and beds," without stating what property is the subject matter of the crime. The same rule should apply in the present case.

It does not appear how much business or how many transactions were had between the Director of State Parks and the Hart-Rollins Furniture Company. There may have been hundreds of transactions. The very general indictment setting forth scarcely more information than that contained in the Code section (which, being a form, is obviously insufficient to identify anything) thus permits the State to sandbag the defendant Rollins with evidence he can not possibly be prepared to refute. The indictment in this form withholds from the defendant the facts that are necessary in order that he may prepare a defense. What harm can be done to the State by charging specifically what transactions occurred between the parties that resulted in the fraud and the loss of $3,000? If the charges are true, it need have no apprehension about establishing them, for the State surely knows what items it paid for that it did not receive. If the charges are not true, the defendant ought not to be called upon to refute false accusations. The only way he can get a fair trial is to know in advance what he is charged with. The majority opinion in this case precludes the right of the defendant to information essential to his defense.