## 73707. SKINNER v. THE STATE.
(355 SE2d 726)

BIRDSONG, Chief Judge.

Charles Skinner, Kembile Barnes and Russell Holbrook, were jointly indicted for conspiracy to violate the Georgia Controlled Substances Act. Barnes and Holbrook entered pleas of guilty to the indictment and Skinner brings this appeal from his conviction. Donald Augustine and Larry Sproat, Special Agents with the U. S. Drug Enforcement Administration, met with Barnes and Holbrook and discussed the purchase of a kilogram of cocaine. Augustine purchased a quarter ounce of cocaine for $550 from Barnes. Barnes also gave him some marijuana and ten tablets of methaqualone. The methaqualone was analyzed and it was what it was purported to be. Augustine then asked to purchase 100,000 tablets of methaqualone, also called "Quaaludes," for 90¢ per tablet. Barnes could not deliver the entire 100,000 but agreed to deliver 15,000 Quaaludes for $18,000 at the Ramada Inn parking lot in Marietta. Sproat was to act as the "money man" and stayed in the car to prevent the drug dealers from "ripping off" the purchase money. Barnes and Holbrook were the delivery men

and the drug "source" stayed separate from them to "insulate" himself from the actual dealing.

At the meeting in the Ramada Inn, Barnes told Augustine that his "source" did not want to "deal" in the Ramada parking lot, but preferred to deal at the "Hunt Club" where his girl friend worked. Augustine refused to budge, saying that his "money man" wanted to deal at the Ramada. Barnes and Holbrook were driving a 1979 white Oldsmobile Cutlass and agreed to go get the drugs and return. DEA Special Agent Richard Tucker was in another car with a Marietta policeman keeping surveillance on the Ramada parking lot and followed Barnes and Holbrook when they left. Barnes and Holbrook went to the Hunt Club and entered. "[T]he door barely had had time to close, then they came back out" accompanied by defendant Skinner. The three men went to the trunk of a Lincoln Continental and bent over the trunk but did not raise the trunk lid. Thereafter, Holbrook and Barnes drove away in the Lincoln and Skinner got in the Olds Cutlass and followed them. The DEA agent followed the two cars to the Ramada Inn parking lot. Skinner parked on one side of the lot and the Lincoln parked across from it.

When Agents Augustine and Sproat returned to the Ramada parking lot, they drove up to the white Olds Cutlass Barnes and Holbrook had been driving when they left and observed defendant Skinner slumped down in the driver's seat. Then they saw Barnes and Holbrook in the Lincoln and drove over to them. Augustine remarked to Barnes that he had seen his "source of supply, sitting across the parking area in the Oldsmobile. And [Barnes] said, Yeah. . . . We switched vehicles, and my source of supply, or my man, wanted to watch the deal go down to protect his interest." Barnes assured Augustine that the Quaaludes would be "very, very high quality methaqualone tablets" and they would go to Florida the following day to pick up the remainder of the hundred thousand Quaaludes. Barnes and Holbrook attempted to open the trunk of the Lincoln but the key would not work. That is when "Holbrook said Charles could not open the trunk using the key, that you have to use the inside trunk release." The inside trunk release was then used to open the trunk and Augustine observed what he thought to be Quaaludes. The tablets were scored on one side and were stamped "Lemmon 714," which were the correct markings for Quaaludes. Augustine then gave the signal and police officers moved in and arrested all three defendants. A loaded pistol was taken from Holbrook and another loaded weapon was taken from the Lincoln. An unloaded weapon was found in the Olds Cutlass. A chemical analysis of the purported Quaaludes showed them to be a decongestant. They were counterfeit drugs.

Skinner testified that he knew nothing about this offense. Barnes came into the Hunt Club and asked him to drive one of his cars

home. He said that he would but he had to return soon as he had a date with his girl friend who worked at the Hunt Club. Skinner's girl friend, now his wife, testified that she saw Barnes come into the Hunt Club and ask Skinner to drive one of his cars home. She said that Barnes probably stayed "thirty, forty-five minutes or an hour before they left." She knows Barnes "sat around and drank a couple of beers, but he was in there longer than that. . . ." Skinner appeals from the jury verdict of guilty and sentence entered upon the verdict. *Held*:

1. The appellant alleges the trial court erred in denying his motion for a directed verdict of acquittal "in that the evidence presented . . . failed to prove a conspiracy to commit a substantive crime, but in the alternative proved a completed act which constituted no crime. . . ." Although it is not clear what this allegation of error encompasses, appellant argues "it was the clear intent of our legislature to make conspiracy a separate and distinct crime only in those instances where the crime conspired to be committed had not in fact been committed. . . . Once the substantive crime charged as the object of a conspiracy has in fact been completed, the charge of conspiracy is no longer applicable . . . the sale or transaction which . . . was to constitute the substantive crime . . . which was the object of the conspiracy charged in the indictment . . . the transaction set up between Barnes and Augustine did not fall through; it was consummated."

Appellant is correct in his citation of law, but we find no foundation in fact for such an argument. The Supreme Court addressed this issue in *Scott v. State*, 229 Ga. 541, 544 (192 SE2d 367), and held that "[i]t is manifest from a reading of [Code Chap. 26-32; now OCGA § 16-4-8] of the Criminal Code of Georgia that it was the intent of the legislature to make conspiracy itself a separate crime only in cases where the crime conspired to be committed had not in fact been committed, that is, where the conspiracy had been, so to speak, 'nipped in the bud.'" In the instant case, the criminal offense which was the object of the conspiracy was the sale and purchase of 15,000 Quaaludes. There was no sale of, delivery of, or purchase of any Quaaludes. Hence, the crime which was the object of the conspiracy was not completed and it was not error to charge the crime of conspiracy for this reason.

2. The appellant contends the trial court erred in denying his motion for a directed verdict on the basis that the evidence presented "failed to prove an essential element of the crime charged, that is the specific intent to distribute and deliver methaqualone. . . ." The offense of conspiracy to commit a crime is defined by our code as when one person "together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to

effect the object of the conspiracy." OCGA § 16-4-8 (formerly Code Ann. § 26-3201). It is readily observed that the statutory definition of this offense does not include "intent" as an element. However, treatise writers have added a gloss to the statute by explaining that "[i]ntent of two kinds is required to establish a conspiracy. First there must be an intent to agree [cit.], and lack of capacity to agree may negate this requirement. [Cit.] Second, a defendant must have intent to realize a criminal objective but not necessarily the one which resulted." Daniel, Ga. Criminal Trial Practice (1985), § 13-25; accord Kurtz, Criminal Offenses in Ga. 57. However, our Supreme Court has repeatedly defined a "conspiracy" as " 'a corrupt agreement between two or more persons to do an unlawful act.' *Fincher v. State*, 211 Ga. 89 (4) (84 SE2d 76); *Park v. State*, 224 Ga. 467, 473 (162 SE2d 359)." *Sentell v. State*, 227 Ga. 153, 156 (179 SE2d 234). Regardless of the efficacy of treatise writers' deductions from appellate decisions, the trial court in the case at the bar charged the jury that appellant could not be found guilty by his mere presence and that "[a] specific intent to commit the crime charged in the indictment is an essential element that the state must prove beyond a reasonable doubt."

Appellant's co-defendants, Barnes and Holbrook, both pleaded guilty to the same offense charged against this defendant. Holbrook testified concerning appellant, Barnes and himself meeting in Barnes' house just prior to this incident. He heard "Mr. Barnes and Mr. Skinner were preparing to do a drug deal." He said appellant was "in the parking lot at the Ramada Inn. . . . Making sure everything went down right," and that those drugs were "Mr. Skinner's," for "[h]e's the one that brought them." The agreement between the parties was adequately proven. Barnes and Holbrook testified that they had entered a plea of guilty to the same offense charged against this appellant, and in any conspiracy the intent of the actual perpetrator is imputable to his co-conspirators. *Burke v. State*, 234 Ga. 512, 513 (216 SE2d 812); *Pressley v. State*, 207 Ga. 274, 282 (61 SE2d 113). This enumeration is without merit.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

### ON MOTION FOR REHEARING.

On motion for rehearing, counsel for appellant alleges (1) "this Court has overlooked a material fact in the record, specifically that the substance in question was not in fact methaqualone, but merely an uncontrolled and legal substance," and (2) "construe the dual intent requirement of a charge of conspiracy to be merely a gloss of explanation offered by treatise writers."

First, as stated in the original opinion: "A chemical analysis of the purported Quaaludes showed them to be a decongestant."

(Supra.) Secondly, appellant contended in its brief that the evidence failed to prove "the *specific intent* to distribute and deliver methaqualone. . . ." (Emphasis supplied.) We quoted the statute on general conspiracy, in effect at the time of these alleged offenses, Code Ann. § 26-3201 (now OCGA § 16-4-8; but see also OCGA § 16-13-33), and observed that the statutory elements of the offense of conspiracy did not include a *specific* intent. However, we noted the ease with which treatise writers added requirements for proof of two kinds of intent in proving a conspiracy. There was no need to reach this issue as the opinion pointed out that the trial court charged the jury on the necessity for them to find "[a] specific intent to commit the crime charged in the indictment. . . ." Since the jury found the evidence supported a finding of specific intent to commit the crime charged, no useful purpose is served by a discussion of whether the jury was required to reach that element.

On rehearing, appellant again stresses the lack of proof of any *specific* intent on his part to commit the offense of distribution of methaqualone, but "merely an uncontrolled and legal substance." Appellant ignores Code Ann. § 79A-811 (i) (now OCGA § 16-13-30 (i)), which prohibits possession, control, delivery, distribution or sale of a "counterfeit substance." "Counterfeit substance" is defined as "a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number or device, or any likeness thereof, of a manufacturer. . . ." Code Ann. § 79A-802 (f) (now OCGA § 16-13-21 (6)). Hence, the substance transferred was not a "legal substance" because Barnes advised the undercover officer the substance was methaqualone and the officer observed the marking on each pill of " 'Lemmon 714,' which is common to methaqualone tablets."

Appellant's position on appeal is that (1) he did not participate in the conspiracy, and (2) even if he did, the act charged was not proved because the alleged illegal drug distributed was a "legal substance," a decongestant (60 of the 15,000 pills were aspirin). Pretermitting the issue of whether it is legally permissible for an appellant to rely upon inconsistent defenses (see *Gregoroff v. State*, 248 Ga. 667, 670, 671 (285 SE2d 537)), we have found the evidence sufficient to establish the offense alleged.

Co-conspirators Barnes and Holbrook had entered pleas of guilty to the charge of conspiracy to distribute and deliver methaqualone (Quaalude). Holbrook testified he witnessed a conversation between Skinner and Barnes, in Barnes' house, on the day this transaction occurred, in which "Barnes and Skinner were preparing to do a drug deal . . . Quaaludes. . . ." Later that day, Holbrook and Barnes obtained the drugs from Skinner, and attempted to transfer them to the undercover police officer. Barnes testified that he "knew what was in

the trunk of the car . . . what was supposed to be in the trunk of the car. . . ." Barnes assured the undercover officer the pills were "very high quality Quaaludes of a "better quality" than the samples he had previously given him. The pills each carried the methaqualone trademark "Lemmon 714." None of the co-conspirators testified at trial that they did not believe the drugs to be methaqualone. After all three conspirators were arrested and placed in jail, Skinner is said to have told Holbrook that "the drugs . . . they wasn't any good."

The question of the existence of a conspiracy is for the jury. *Hurt v. State*, 239 Ga. 665, 673 (238 SE2d 542). The crux of a conspiracy "is the corrupt agreement between two or more persons to commit an act prohibited by law." *Rollins v. State*, 215 Ga. 437, 439 (111 SE2d 63). The jury was authorized by the evidence to find that Barnes and Holbrook believed they were participating in an unlawful agreement for the sale of methaqualone. All participants in a conspiracy are criminally responsible for the acts of each, committed in the execution of the plan. *White v. State*, 255 Ga. 210 (1) (336 SE2d 777). Further, in a conspiracy " '[t]he intent of the actual [actor] is imputable to his coconspirators.' " *Burke*, supra at 513. Hence, when viewed in the light favorable to the verdict, the evidence was sufficient to enable any rational trier of fact to find the existence of the offense of conspiracy to distribute methaqualone, between Barnes and Holbrook, beyond a reasonable doubt (*Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560)), and such intent is imputable to their overt conspirator, according to Holbrook, the appellant Skinner.

*Motion for rehearing denied.*

DECIDED MARCH 13, 1987 —
REHEARING DENIED MARCH 30, 1987 —

*Bobby Lee Cook, Sr., William T. Cox, Jr., A. Kristina Cook Connelly, L. Branch S. Connelly*, for appellant.

*Thomas J. Charron, District Attorney, James T. Martin, Assistant District Attorney*, for appellee.