James C. SWEENEY, Appellant,

v.

R. P. BALKCOM, Jr., Warden, Appellee.

No. 21785.

United States Court of Appeals
Fifth Circuit.

March 22, 1966.

Harry Griffin, Jr., Atlanta, Ga., for appellant.

Peyton S. Hawes, Jr., Asst. Atty. Gen., Albert Sidney Johnson, Deputy Asst. Atty. Gen., Atlanta, Ga., Eugene Cook, Atty. Gen., Atlanta, Ga., on the brief, for appellee.

Before BROWN, WISDOM, and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Because Georgia law accords to certain public officials the right to appear before and be heard by the grand jury prior to being indicted for malfeasance in office, Appellant, who was convicted of robbery in state court and who as a nonofficial was not given the opportunity to appear before the grand jury which indicted him, claims that his petition for habeas corpus should have been granted on the ground that he was denied equal protection of the law. Despite the resourceful arguments put forward with great skill by court-appointed counsel, we disagree and affirm the District Court's denial of Appellant's petition.

After indictment by a Georgia grand jury for robbery,[1] Appellant was convicted of robbery and sentenced to six years' imprisonment. He did not appeal this conviction, but raising the same point he urges here, he sought habeas in the state court. The state court's rejection of his contention was affirmed by the Supreme Court of Georgia. Sweeney v. Balkcom, 1963, 219 Ga. 292, 133 S.E.2d 10. The Federal District Court, likewise, rejected Appellant's equal protection objection.

Although Appellant and his zealous court-appointed counsel make a rather vigorous attack on the grand jury system, what this objection boils down to is this: the State of Georgia provides a special procedure on indictments of public officials for malfeasance in office and thereby discriminates against nonpublic official accuseds.

To elaborate, Ga.Code Ann. § 89–9908 provides the public official defendant two important rights: (1) the right to be served with a copy of the indictment prior to its being laid before the grand jury, and (2) the right to appear with witnesses before and to be heard by the grand jury.[2] These rights are accorded to (1) any "ordinary, member of any board of commissioners, county judge, or justice of the peace, who shall be charged with malpractice in office * * *"[3]

---

1. Every felony prosecution in Georgia must, unless waived, originate with indictment by the grand jury. Ga.Code Ann. § 27–704.

2. Ga.Code Ann. § 89–9908: *"Indictment for malpractice. Trial by jury.*—An indictment under the preceding section [see note 3, infra] shall specially set forth the merits of the complaint, and a copy thereof shall be served on the defendant before it is laid before the grand jury. The prosecutor and the defendant, and their witnesses, shall have the right of appearing before and being heard by the grand jury. The indictment, if found true by the grand jury, shall, as in other cases, be tried by a petit jury."

3. Ga.Code Ann. § 89–9907: *"Malpractice, oppression, and tyrannical partiality.*— Any ordinary, member of any board of commissioners, county judge, or justice of the peace, who shall be charged with malpractice in office, or with using oppression or tyrannical partiality, or with wilfully refusing or failing to preside in or hold his court at the regular terms thereof or when it is his duty under the law to do so, or with using any other means to delay or avoid the due course

**417**

and (2) any State official charged with misfeasance or malfeasance in office.[4] And in the latter case, the Attorney General of Georgia must be notified before the indictment is presented to the grand jury.

On this statutory structure Appellant's theory is sharply revealed: Since these rights are not accorded to non-public officials, they were not accorded to Appellant. The Constitution does not require that these rights be accorded to anyone, but it prohibits them being accorded to public officials and denied to Appellant since there is no rational basis for Georgia to distinguish between public officials and non-public officials such as Appellant. His plight establishes that Appellant needs the protection of the § 89–9908 procedures as much, if not more, than any public official.[5]

This is a case of first impression if only for the reason that Georgia appears to be the only state in the nation which accords to public officials charged with malfeasance in office the right of appearance before the grand jury.[6] Indeed, the almost universal rule is that no one, public official notwithstanding, charged with a crime has the right to appear before the grand jury. 38 C.J.S. Grand Juries § 40.

But this right has since Civil War days been accorded by Georgia to certain county and judicial officials,[7] and as recently as 1943 was extended to all State officials.[8] Though the wisdom of this special privilege has been seriously questioned [9]

or proceeding of law, or with any other conduct unbecoming the character of an upright magistrate, or who shall wilfully and knowingly demand more cost than he is entitled to by law, in the administration and under color of his office, shall be punished as for a misdemeanor and shall be removed from office."

4. Ga.Code Ann. § 40–1617: *"Procedure on indictments for misfeasance or malfeasance in office.*——Before an indictment against any State official charging him with misfeasance or malfeasance in office shall be laid before a grand jury, the rights provided in section 89–9908 relating to county officials shall be afforded the said State official and the Attorney General of Georgia shall be notified of such contemplated action, by the solicitor general of the county wherein the grand jury shall convene."

5. In no fashion does Appellant attempt to demonstrate that the State's failure to accord him the procedures of 89–9908 resulted in prejudice to him, that if allowed to appear before the grand jury with witnesses and counsel, he would have disclosed facts or arguments which would result in his being no-billed. Nevertheless, because of the disposition we make of this case, we assume that Appellant has been prejudiced by denial of the § 89–9908 procedures and thus avoid the difficult question of whether a showing of prejudice—or the likelihood thereof—is necessary in a case such as this.

6. An analogous question was raised, but not decided, in Beck v. Washington, 1962, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d

98. The Appellant there contended that he was denied equal protection by virtue of the fact that Wash.Rev.Code Ann. § 10.28.030 grants to persons in custody the right to challenge the grand jury for prejudice, whereas not being in custody, he was accorded no such right. The majority did not reach this question on the ground that it had not been raised in the lower courts. However, Justices Black and Douglas, dissenting, would have decided the question and done so favorably to the Appellant Beck.

7. Sections 89–9907, 89–9908 (notes 2 and 3, supra,) originated with § 4391 of the Georgia Code of 1861.

8. Ga.Laws 1943, at 284, 287 (now § 40–1617, note 4, supra).

9. We are advised by the briefs that the special privileges contained in § 89–9908 were nearly repealed by the Georgia legislature during the 1964 session. See The Atlanta Journal, June 30, 1964, p. 23. In an editorial of June 3, 1964, the Journal made the following comment:
"The law lets members of the governing class appear before a grand jury in the event the grand jury is investigating them.
"It is not a privilege granted to the governed.
"It is a crass piece of class legislation.
"It could be used as the greatest fringe benefit and prerequisite of elective office since the invention of per diems and the expense account.
"It reads like something left over from Runnymede."

and the Georgia courts have severely limited the class of public officials [10] and the kind of criminal charges to which it applies,[11] its rationale appears to be that public officials "should not be annoyed by being required to defend, and (what is more important) should not be injured in the public estimation, or their public efficiency be impaired while resting under a baseless charge." [12] Thus when the privilege is applicable, it is interpreted most liberally.[13]

But novel as the question here may be, we do not find it difficult of resolution, and in resolving it, there is little to be gained by an extended discussion of the many Supreme Court decisions expounding the concept of equal protection.[14] We simply use the test which Appellant suggests:

> "When a state legislature has declared that, in its opinion, policy requires a certain measure, its action should not be disturbed by the courts under the 14th Amendment, unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched."

Missouri, Kansas & Texas Ry. Co. of Texas v. May, 1904, 194 U.S. 267, 269, 24 S.Ct. 638, 639, 48 L.Ed. 971, 972, and applying this test, we find a plausible

reason why the Georgia legislature may accord the procedure provided by § 89–9908 to public officials and not to Appellant.

We begin with the function of the grand jury in Georgia. In Georgia the grand jury has great power. Beyond the usual accusatory powers, the statutes and constitutional provisions clothe the grand jury with broad authority to investigate the performance of official duties. See Ga.Code Ann. §§ 59–301 to 59–320. Though in absence of specific statutory authority the grand jury has no right to return a report charging or casting reflections of misconduct in office upon public officials or impunging their character, except by presentment or indictment, the grand jury's presentment may be widely published, Ga.Code Ann. § 59–317, and is treated as an indictment, Ga. Code Ann. § 27–703. Furthermore, even the secrecy of the grand jury proceedings would not protect public officials or others from public accusation of crimes. For a complaint charging the commission of an offense can be filed by any citizen, and any judge of a superior, city, or county court, or justice of the peace, may issue a warrant for such accused's arrest. Ga. Code Ann. § 27–102. After a court of inquiry by a single judge "to determine whether there is sufficient reason to suspect the guilt of the accused, Ga.Code

10. Jones v. Mills, 1961, 216 Ga. 616, 118 S.E.2d 484, held that the Director of the Motor Fuel Tax Unit of the Georgia Department of Revenue is not a "State official" within the meaning of § 40–1617, since his position is not established by the state constitution or statutes, he is not administered an oath by the Governor, and he receives no commission from the Governor.

11. Clinkscales v. State, 1960, 102 Ga.App. 670, 117 S.E.2d 229, held that a special presentment against a superior court judge charging him with persuading the chairman of the county commissioners to pay an unearned commission to a third person for the sale of county hospital bonds did not charge the judge with committing malpractice in office, and thus did not entitle him to the procedures of § 89–9908. The sale of bonds was not part of the judge's official duties. Since

malpractice in office is equivalent to professional malpractice, the Court of Appeals expressly noted that murder or robbery by a high public official would not constitute malpractice in office.

12. Dyer v. State, 1909, 7 Ga.App. 58, 65 S.E. 1089.

13. See Oliveira v. State, 1872, 45 Ga. 555. Moore v. State, 1940, 64 Ga.App. 171, 12 S.E.2d 410, held that the right to appear before the grand jury under § 89–9908 requires a reasonable opportunity to gather witnesses and be heard, and under Cadle v. State, 1960, 101 Ga.App. 175, 113 S.E.2d 180, the right to be heard includes the right to appear with counsel. Cf. Cargile v. State, 1942, 194 Ga. 20, 20 S.E.2d 416.

14. See generally Tussman & ten Broeck, The Equal Protection of the Laws, 37 Calif.L.Rev. 341 (1949).

Ann. § 27–407, the accused is bound over to the grand jury and has a right to demand indictment in both felony and misdemeanor cases, Ga.Code Ann. § 27–704.

With the breadth of its self-initiated investigatory powers and the crucial buffer-position it occupies between the single citizen's charge and the accused's freedom from having to defend himself in a criminal trial, the grand jury plays a decisive role in the state's criminal process.[15] Georgia presumably apprehends that the danger is great that a public official's political enemies will precipitate grand jury proceedings against him either initially or after a citizen's complaint and public bind-over hearing, and that the grand jury has ample statutory reins to become run-away on its own initiative, or on the spurring of the prosecutor, not unknown to have political whips to crack, who is usually in the driver's seat. Thus, in the case of public officials, vis-a-vis nonpublic official accused, the danger is thought to be greater than an indictment will be based on partisan, political grounds.

More important, from the public's point of view, it is the Georgia view that in the case of a public official the effect of an unfounded charge or an unfounded indictment can often be devastating. Not simply on the individual official, but on the entire state or local government. When a public official is indicted for malfeasance in office, public confidence in the office, and often the entire administration or judicial system, will be shaken, perhaps irreparably undermined.[16] And worse, the smooth, uninterrupted functioning of government, so important to the public welfare, may be endangered by requiring high public officials to endure a time-consuming trial which takes them from the performance of official duties. A dramatic example of such disruption is provided by Ga.Code Ann. § 24–9902:

"No justice of the peace shall exercise the duties or functions of his office or perform any act therein after an indictment or general presentment of a grand jury has been returned against him for malpractice in his office, until the termination of the case made by the indictment or presentment."

The dual dangers that the grand jury will be influenced by extra-legal, political considerations to return an unfounded indictment against a public official and that such indictment will cause disrespect of the pubic office are legitimate concerns of the State, providing a rational basis on which it could provide special protection from unfounded malfeasance in office charges or indictments of its commissioned officials, county judges, justices of the peace, and county commissioners. Georgia has chosen the procedures of § 89–9908 as the means of effecting this policy.

One of the strongest arguments advanced for Appellant is that no other of the 50 states extend this unusual protection to such officials. But while none go so far, other states have chosen analogous means. Some states, for example, insist that grand jury indictments of public officials for misconduct in office be much more specific about the details of the charge than indictments of nonpublic officials for other crimes.[17] Many states, recognizing the far-reaching public consequences of trying public officials for crimes related to their offices, seek to protect public officials by assigning jurisdiction over official-misconduct crimes to courts superior to those which have

---

15. For an excellent discussion of the role of the grand jury, see United States v. Cox, 5 Cir., 1965, 342 F.2d 167 (en banc), and especially the concurring opinion of Judge Wisdom, 342 F.2d at 185.

16. This is undoubtedly why § 40–1617 (note 4, supra) requires notification of the Attorney General of Georgia of a proposed indictment of state officials.

17. Petition of McNair, 1936, 324 Pa. 48, 187 A. 498, 106 A.L.R. 1373, where the Court recognized that grand jury investigations "frequently interfere with the normal functioning of public officials and bodies brought before it. They throw a cloud of suspicion upon the parties subject to attack and undermine public confidence in them." 187 A. at 505.

jurisdiction over similar, but non-official, offenses.[18]

■■ That Appellant's equal-protection argument is without merit becomes all the more clear with the recognition—conceded by counsel on argument—that had a public official committed the crime for which Appellant was indicted—robbery—he would not solely by virtue of his position be entitled to the protections of § 89–9908. That section is available only when the public official is charged with malfeasance, or malpractice, in office, and the Georgia courts hold that such an offense is committed only when there is a close connection between the wrongful acts and the defendant's performance of official duties. See note 11, supra. There is both a factual and legal distinction between the crime of malfeasance in office and the crime of robbery. The nature of the former is highly elusive, its elements greatly subjective. For instance, one of the crimes to which § 89–9908 applies is oppression in office (note 3, supra):

"There is no exact common-law definition of official oppression and the possible acts which may constitute the crime are as many and varied as the forms of corruption that may exist in public office. Nor do statutes ordinarily define the offense, but are usually drafted in such general terms as oppression, partiality, misconduct, or abuse of authority. * * * Despite the varying language of the statutes, the courts agree that in order to constitute the offense there must be proved facts which show that the official, while acting under the pretext of exercising his authority, has in some way wronged the complainant for his own selfish or vindictive reasons. The courts also agree that the act of an official, no matter how contrary to law it may be, will not support a conviction of official oppression if the act was committed in the honest belief that the authority thus exercised was within the powers pertaining to the position occupied by the public officer—especially in the case of a judicial officer."

43 Am.Jur. Public Officers § 327, at 127 (Supplement 1965). See Lancaster v. Hill, 1912, 136 Ga. 405, 71 S.E. 731. Considering the nebulous nature of these offenses, it would not be unreasonable for Georgia to conclude—as it obviously has—that those charged with them should be given the opportunity to justify and explain their actions before the grand jury prior to indictment. As the Supreme Court said in Tigner v. State of Texas, 1940, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124, 1128:

"The Fourteenth Amendment enjoins 'the equal protection of the laws', and laws are not abstract propositions. They do not relate to abstract units, A, B and C, but are expressions of policy arising out of specific difficulties, addressed to the attainment of specific ends by the use of specific remedies. The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."

And more precisely, in Skinner v. State of Oklahoma ex rel. Williamson, 1942, 316 U.S. 535, 540, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1659–1660:

"Thus, if we had here only a question as to a State's classification of crimes, such as embezzlement or larceny, no substantial federal question would be raised. * * * For a State is not constrained in the exercise of its police power to ignore experience which marks a class of offenders or a family of offenses for special treatment. Nor is it prevented by the equal protection clause from confining 'its restrictions to those classes of cases where the need is deemed to be clearest'."

18. See, e. g., Vernon's Ann.Tex.Const. art. V, § 8, and Vernon's Ann.Tex.Code Crim. P. art. 54, prescribing jurisdiction of the district courts, require that the trial of all "misdemeanors involving official misconduct" be in the District Court—the Texas court of record of general jurisdiction—rather than in inferior courts having jurisdiction of all other misdemeanors.

In light of the role of the Georgia grand jury, the nature of the crimes covered by § 89–9908, and the effects of indictment of a public official for their commission, we conclude that Georgia's failure to extend the privileges of § 89–9908 to Appellant is not a denial of equal protection of the laws.

Affirmed.